COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,[*] Judge Elder and
          Senior Judge Duff
Argued at Alexandria, Virginia


KENNETH LAMONT BRAXTON
                                        OPINION BY
v.         Record No. 1344-96-4    JUDGE LARRY G. ELDER
                                     DECEMBER 16, 1997
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     William D. Hamblen, Judge

           Robert F. Horan, III (Ronald Wayne Fahy;
           Horan & Fisher, on briefs), for appellant.

           Michael T. Judge, Assistant Attorney General
           (Richard Cullen, Attorney General, on brief),
           for appellee.


     Kenneth Lamont Braxton ("appellant") appeals his convictions
of first degree murder and petit larceny.  He contends the trial
court erred when it (1) admitted as an "excited utterance" the
hearsay statement of the victim's three-year-old son ("child")
and (2) ruled that the child's statement and evidence regarding
his condition following the discovery of the victim's body were
relevant.  For the reasons that follow, we affirm.

                              I.

                            FACTS

     In early 1995, Lorann Cox ("victim") was working as an
undercover drug informant for the Manassas City Police
Department.  On February 3, 1995, she executed a controlled buy

_____
     [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

of cocaine from appellant. On June 3, the Manassas police obtained a warrant for appellant's arrest based upon the information provided by the victim. This warrant was executed on June 7 and a preliminary hearing was scheduled for July 6. A subpoena was issued ordering the victim to appear and testify at the preliminary hearing.

On June 30, appellant was riding in a car near the victim's home with his second cousin, Yolanda Skinner. Appellant told Skinner "about some charge that [the victim] had on him" and stated that "he would kill [the victim], if he could." Appellant pointed out the victim's house to Skinner and said, "that's where the bitch lives." During this conversation, appellant asked Skinner if she knew where he could obtain a gun. Skinner replied that she did not know anybody who had a gun.

On the evening of July 2, the victim and her three year old visited her parents at their home. The victim's father noticed that the child's "nose [was] running" and made arrangements with the victim to care for the child the following day. The victim's father and the victim, who worked for the same employer but at different times of the day, arranged to meet at the end of the father's shift so that the father could take the child home and care for him while the victim worked. After making these arrangements, the victim left her parents' house around 10:30 p.m. to return home for the evening.

The next day, July 3, the victim did not meet her father at

the appointed time. The victim's father attempted to contact her by phone and by pager, but the victim did not respond. The victim's father then drove to the victim's house and arrived there at about 2:35 p.m. He tried the front door, discovered that it was unlocked, and walked into the victim's house. After searching for six or seven minutes, he discovered his daughter's body lying face down behind a love seat in the living room. He also found the child, who was unharmed, next to the victim's body. The victim's father picked up the child and removed him from the scene. Four minutes later, the victim's father used a phone in a neighboring house to call "911" and then the victim's brother.

Both an ambulance and the police arrived at the scene a short while later. The victim's house was secured, and investigators collected evidence from the scene. A metal cooking pot with a large dent in it was found a few feet from the victim's body. A plastic container that dispensed body lotion was found next to the victim's sink. A bloody fingerprint matching appellant's right index finger was found on top of the dispenser's pumping mechanism. A DNA analysis of the blood in which the fingerprint was formed indicated a high probability that it was the victim's.

An autopsy of the victim revealed that she was stabbed nineteen times in the neck with a sharp object. The medical examiner also found "a number of bruises about the [victim's]

-3-

body and face" and a swollen area on the back of her head that were consistent with "a blow to the head with a large object such as a pot."  The victim's death was attributed to the stab wounds to her neck, which caused "profuse bleeding."

Ronald Wortmann, an inmate in the Prince William County Adult Detention Center, informed authorities that appellant confessed to him that he murdered the victim.  Wortmann later testified that he asked appellant "what he was in here for" and appellant told him that he had been charged with the victim's murder.  Appellant then told Wortmann that "[he] did the bitch."  Appellant told Wortmann he had learned that the victim was working undercover for the Manassas City Police Department by following her when she met with officers at the police department.  When Wortmann asked him why he had murdered the victim, appellant responded, "she was going to tell on all of us."  Appellant also told Wortmann that "a baby" was at the scene when he murdered the victim.

Appellant was charged with the capital murder and robbery of the victim.  A jury convicted him of first degree murder and petit larceny.

The scope of this appeal is limited to the admissibility of an out-of-court statement made by the child after he was discovered at the crime scene and the evidence regarding his condition during this time.  The following is a summary of the contested evidence.

At trial, the victim's father testified that when he found the child next to the victim's body, "it looked like [the child] had been sleeping across her body . . . ."  After he picked up the child and carried him out of the house, the victim's father noticed that "[the child] had dried mucous down the front of his nose from the cold" and that he was wearing "the same diaper that he had on the night before."  He also noticed that the child was wearing a t-shirt that had "some blood on it" and that the child "had kind of a glazed look in his eyes" and "was in a dazed state."  Appellant objected to all of this evidence on the ground that it was not relevant, and the trial court overruled his objections.

Later in the trial, the victim's brother testified that the victim's father gave the child to him outside the victim's home.  The victim's brother testified that he spoke with a police officer for about five minutes and then took the child to his home "to get him away from everything."  The victim's brother noticed that the child "was not himself" and that he "was in shock, kind of dazed."  The victim's brother also observed blood on the child's shirt and identified in court the blood-stained shirt that the child had been wearing.  The victim's brother testified that his wife washed the shirt before delivering it to the police.  Appellant's counsel objected to all of this evidence on the ground that it was irrelevant, and the trial court again overruled his objections.

The victim's sister-in-law testified that, on July 3, the victim's brother brought the child to their house from the crime scene. She testified that the child "was quiet [and] subdued" and that "there was some blood on his shirt." She testified that she removed the blood-stained shirt from the child and eventually washed it. Appellant's counsel objected to all of this evidence on the ground that it was not relevant. The trial court overruled his objections. The victim's sister-in-law also testified that the child made statements about the victim "every ten to fifteen minutes."

Kathleen Burch testified that she arrived at the residence of the victim's sister-in-law on July 3 after the child was already there. She testified that the child indicated to her that he wanted to "go out and play" and that she took him outside. When asked to describe the child's "demeanor and appearance," Burch testified that the child "was very quiet and just dazed." Appellant's counsel did not object to this testimony.

The Commonwealth then indicated to the trial court that it intended to offer a statement that the child made to Burch while the two were outside. The trial court heard arguments regarding the admissibility of this statement outside the presence of the jury. The Commonwealth proffered that Burch would testify that "the child unsolicited told her the man -- hit[ing] his head like this (indicating) -- Mommy on the head." Appellant's counsel

-6-

argued that the statement was inadmissible on three grounds:
(1) it was hearsay not within the excited utterance exception;
(2) it was cumulative of other evidence already admitted; and
(3) it was irrelevant.

The trial court ruled that the child's statement was relevant. It reasoned that the statement was probative of "how that contusion came to be on [the victim's] head" and of "the gender of the person who struck her." The trial court then ruled that the statement, although hearsay, fell within the excited utterance exception to the hearsay rule. It reasoned:

> The age of the child, I think, is a substantial factor. And the evidence in this case establishes at least this. That while it's not clear what period of time elapsed between the time that [the victim] was injured or killed until the time he saw [the victim's father], the evidence does establish fairly clearly that from the time [the victim's father] came and picked him up out of there he was passed off in quick succession from [the victim's father] to [the victim's brother] . . . to [the victim's sister-in-law] and then to [Burch], and that he was variously described as quiet, dazed, those sorts of things, which is to say . . . in my view that [the child was] under the influence of the events still . . . .

Burch then testified that the child told her "[t]hat man (indicating) mommy on the head." The record established that Burch placed her hand to her head "in a striking manner."

Later in the trial, Officer S. C. Newsome of the Prince William County Police Department testified that, on March 6, 1996, the victim's sister-in-law gave him the blood-stained shirt

worn by the child on July 3, 1995.  He identified the shirt in court, and the Commonwealth offered the shirt into evidence. Appellant's counsel objected to the admission of the shirt "on a relevance basis," and the trial court overruled his objection.

EXCITED UTTERANCE

Appellant contends the trial court erred when it concluded that the child's hearsay statement to Burch fell within the "excited utterance" exception to the hearsay rule.  We disagree.

"As a general rule, hearsay evidence is incompetent and inadmissible," and "[t]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility."  Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992).

> A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability.  "There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided.  Resolution of the issue depends upon the circumstances of each case."
> The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation.  In addition, the declarant must have firsthand knowledge of the startling event.  The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court.

Goins v. Commonwealth, 251 Va. 442, 460, 470 S.E.2d 114, 126, cert. denied, ___ U.S. ___, 117 S. Ct. 222, 136 L.Ed.2d 154 (1996) (citations omitted).

Whether a hearsay statement is an excited utterance is not determined solely by the lapse of time between the "startling

event" and the declaration.  See Doe v. Thomas, 227 Va. 466, 471-72, 318 S.E.2d 382, 385 (1984).  Instead, the lapse of time is but one circumstance to consider when determining whether the declarant's statement was "'prompted by a startling event, and not the product of premeditation, reflection, or design.'"  See Martin v. Commonwealth, 4 Va. App. 438, 441, 358 S.E.2d 415, 417 (1987) (citation omitted).  "[I]n the case of statements made by young children, the element of trustworthiness underscoring the spontaneous and excited utterance exception finds its source primarily in the child's lack of capacity to fabricate such a story rather than the lack of time to fabricate."  Walker v. Commonwealth, 19 Va. App. 768, 773, 454 S.E.2d 737, 740 (1995) (citing Martin, 4 Va. App. at 445, 358 S.E.2d at 418).

We hold that the trial court did not abuse its discretion when it admitted the child's out-of-court statement to Burch under the excited utterance exception to the hearsay rule.  The child's age, the evidence of his condition from the time he was discovered at the crime scene until he made his statement, and the circumstances of the making of the statement support the trial court's conclusion that the child was speaking spontaneously in response to a startling event of which he had firsthand knowledge.  The child was only three years old on the date of the victim's murder.  The evidence indicates that the child observed the attack on his mother and was in her presence as she subsequently bled to death.  The child was alone with his

mother's body from the time of the attack until the victim's father found him around 2:35 p.m. on July 3. The child's shirt was stained with blood. The child was passed from the victim's father to the victim's brother to the victim's sister-in-law to Burch in relatively quick succession. All of these persons testified that the child appeared "in shock," "quiet," and "dazed." The record indicates that the child made his statement to Burch within an hour of being discovered by the victim's father and that his statement was unsolicited. Although the record does not establish how much time elapsed between the victim's murder and the child's statement to Burch, the child's limited capacity to fabricate and the evidence that he remained visibly distressed to each person who handled him indicates that his statement was sufficiently reliable to be admitted as an excited utterance.

## II.

### RELEVANCE

Appellant contends the trial court erred when it concluded that the child's statement and the evidence regarding his condition after the victim's body was discovered were relevant. He specifically challenges the admissibility of the child's statement, the evidence that he was wearing a blood-stained shirt and an unchanged diaper, and the evidence that he had dried mucous around his nose and was in a dazed state.[1] He argues that

_____

[1]Appellant also challenges the admissibility of a portion of Ronald Wortmann's testimony. At trial, Ronald Wortmann testified

the prejudicial effect of this evidence outweighed its probative value.  We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "Evidence is admissible if it is both relevant and material." Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).  "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).  "'Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value.'" Id. (quoting Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988)).  On appeal, a trial judge's ruling that any relevant evidence outweighs any incidental prejudice will be reversed only on a clear showing of an abuse of discretion. See Ferrell v. Commonwealth, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990).

---

that appellant stated that he saw the child when he murdered the victim and that he contemplated killing the child.  Appellant contends that this testimony was also irrelevant and erroneously admitted into evidence.  However, appellant failed to raise this issue in his petition for appeal.  Rule 5A:12(c) bars us from considering the merits of this argument.

We hold that the trial court did not abuse its discretion when it concluded that the evidence challenged by appellant was relevant and that the prejudice did not outweigh its probative value. The child's statement was relevant to the identity of the murderer and the causation of the victim's injuries. The child's statement provided the only direct evidence in the record regarding the gender of the victim's assailant. In addition, the child's statement that he saw a man strike his mother on the head tended to establish that the contusion on the victim's head was caused by a blow from her assailant rather than from striking the ground when she fell to the floor.

The evidence regarding the child's condition after he was discovered at the crime scene by the victim's father was relevant to the trustworthiness of his out-of-court statement to Burch. Although the child's statement passed the threshold test of admissibility as an excited utterance, the ultimate credibility and weight of this statement were questions for the jury. See Litchford v. Hancock, 232 Va. 496, 499, 352 S.E.2d 335, 337 (1987). Evidence that tends to establish the credibility of a witness or the reliability of evidence is relevant and admissible. The evidence regarding the mucous on the child's face and the fact that he was wearing "the diaper that he had on the night before" tended to prove the length of time between the "startling event" he observed and his statement. The evidence that he was wearing a blood-stained shirt and that he appeared

dazed was relevant to prove that he was still under the influence of witnessing his mother's murder at the time of his statement. Furthermore, based on our review of the record, we cannot say the trial court abused its discretion when it concluded that the incidental prejudicial effect did not outweigh the probative value of the child's statement and the evidence regarding his condition.

For the foregoing reasons, we affirm the convictions of first degree murder and petit larceny.

<u>Affirmed</u>.