COURT OF APPEALS OF VIRGINIA


Present:  Judges Clements, Agee* and Felton
Argued at Richmond, Virginia


JAMES SLYVESTER JONES
                                      MEMORANDUM OPINION** BY
v.    Record No. 1077-02-2         JUDGE WALTER S. FELTON, JR.
                                          APRIL 1, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                    Edward L. Hogshire, Judge

          Vanessa E. Hicks, Assistant Public Defender,
          for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General;
          Linwood T. Wells, Jr., Assistant Attorney
          General, on brief), for appellee.


     James Jones was convicted in a bench trial of attempting to

possess cocaine, in violation of Code §§ 18.2-257 and 18.2-250,

and possessing a firearm after having been convicted of a

felony, in violation of Code § 18.2-308.2.  On appeal, Jones

contends the trial court erred:  (1) in denying his motion to

suppress the evidence; (2) in admitting the juvenile records

because the Commonwealth failed to prove that the juvenile

_____

     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

petition in fact pertained to him; and (3) in finding the evidence sufficient beyond a reasonable doubt to convict him of possessing a firearm after having been convicted of a felony. For the following reasons, we affirm in part and reverse in part.

## I. BACKGROUND

On July 23, 2000, at approximately 10:30 p.m., Officers Brian O'Donnell, Joseph Trahey, and Greg Annis of the Charlottesville Police Department were traveling on foot in the vicinity of 321 Sixth Street. The officers were in the area because of numerous complaint calls to the police department regarding drug dealing in front of the residence at 321 Sixth Street. The officers approached the residence from the backyard and observed three young males standing in front on the sidewalk. As the officers approached them, the three men dispersed and ran. Jones and another man ran towards Cherry Avenue with Officer Annis in pursuit.

Officer O'Donnell noticed that as Jones ran away, he was also crouching over. As a result, Officer O'Donnell shone his flashlight on Jones and saw that he had a gun in his right hand.[1] Officer O'Donnell yelled "Gun," and commanded Jones to "[g]et on the ground." Subsequently, Officer O'Donnell wrestled him to the ground. As he did so, he heard the sound of Jones' gun hit

---

[1] Jones does not dispute that he possessed the gun at the time of the confrontation.

-

the pavement.  Once Jones was on the ground, Officer O'Donnell handcuffed and searched him while Officer Trahey recovered the gun.

During the search, Officer O'Donnell recovered from Jones' right rear jeans pocket, a knotted plastic bag containing nine off-white, rock-like substances.  At that point, Officer O'Donnell placed Jones under arrest for drug possession.  Jones was taken to the police department and read his Miranda rights.[2] He signed a waiver of those rights and subsequently admitted to Officer O'Donnell that he had the gun for about two months.  He further stated that the substance found in his pocket was crack cocaine, worth approximately $120, that he used to lace marijuana.  Jones was charged with attempting to possess cocaine,[3] in violation of Code § 18.2-257 (18.2-250), and possession of a firearm after having been convicted of a felony, in violation of Code § 18.2-308.2.

On October 19, 2001, a hearing was held whereby Jones requested suppression of the suspected cocaine, the firearm, and any statements he made after being detained, on the grounds that he was illegally seized, detained, and searched by officers of

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] Chemical analysis determined that the substance recovered from Jones was 1.030 grams of aspirin.  Because the substance seized from Jones was not actually cocaine, the substance he thought he possessed, he was charged with attempted possession of cocaine.

-

the Charlottesville Police Department.  At the hearing, Officer O'Donnell was called to testify, among other things, as to why he had conducted the search of Jones.  He testified that when he handcuffed Jones he was placing him into "investigative detention," not arresting him because he had a gun in his hand when he ran from the police.  Officer O'Donnell expressed concern that Jones might still have a weapon.

When asked why he conducted the search, the following colloquy ensued:

> [OFFICER O'DONNELL]:  Basically, the time of night, the numerous calls to the area about specifically drug dealing, the fact that [Jones] broke and ran at police presence and the fact that he had a firearm on his person -- well, in his hand as he ran.  Those things all together.  I believed – I was fairly certain that there were some type of narcotics or other illegal substance on his person.
>
> MR. ZUG [Commonwealth's attorney]:  And what is it about those factors that lead you to believe that – or led you to believe at that time?
>
> [OFFICER O'DONNELL]:  My training experience with people that I've arrested in the past.

The trial court denied Jones' motion to suppress.  It held:

> I think unless he's involved in this vigorous flight and we have to be taken into custody in that fashion and he's actually cuffed and all, I think that under all those circumstances I think he certainly was reasonable in being detained at least to the point of checking the status of that weapon and the status of the defendant in relation to the weapon.  It, you know, again, it's not a -- to me it's not a, what you call,

-

slam dunk issue. I think it's an area that you could debate about.

But, I really believe that the – I don't think there was a – the probable cause. I'm not satisfied absent the stop that there was probable cause to search him. You see, I think once the weapon gets out there, I find that there is probable cause to detain him. And combined with the flight and the association with the drug activity in the neighborhood, that all of that gives rise to, certainly, a basis for a detention for investigation. I think that's what the officer did. And I think that would have inevitably led to the finding of the drugs. I think the officer, when a weapon is out there, if he finds anything in the pocket during the search that could conceivably be a weapon, certainly he'd be able to search him for that.

But I think basically that -- the way I'm coming down on this is a bit of inevitable discovery in the context of the investigation. And that's really what I think the answer to this.

At trial, Jones objected to the admission of certified copies of juvenile and domestic relations district court records to prove a prior felony conviction. He contended that the word "Petition" on one document was hearsay, that the document's admission violated his right to confront witnesses, and the documents reflected that the social security number of the person named was unknown. Officer O'Donnell testified that the records were obtained using information provided by Jones, including his name, date of birth, and social security number. The trial court admitted the juvenile records into evidence. On October 19, 2001, Jones was found guilty of attempting to

-

possess cocaine and possessing a firearm after having been convicted of a felony.

## II.  ATTEMPTED POSSESSION OF COCAINE

We first consider whether the trial court erred in denying Jones' motion to suppress the evidence.  Jones contends that the police exceeded the scope of a legal Terry stop when they seized cocaine from his person.[4]  Furthermore, the evidence did not support the application of the inevitable discovery exception to the exclusionary rule.  As a result, he argues that the trial court should have suppressed the evidence.  We agree.

In reviewing the trial court's denial of a motion to suppress, the defendant has the burden to show that the ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error.  Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002).  "A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal."  Id.; see also Ornelas v. United States, 517 U.S. 690, 691 (1996).  "In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment."  Murphy, 264 Va. at 573, 570 S.E.2d at 838.

---

[4] Terry v. Ohio, 392 U.S. 1 (1968).

-

A. TERRY STOP

"The United States Supreme Court has articulated 'a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer where [the police officer] has reason to believe that he is dealing with an armed and dangerous individual.'" Hall v. Commonwealth, 22 Va. App. 226, 228, 468 S.E.2d 693, 694 (1996) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). However, the authority to conduct a pat-down search does not follow automatically from the authority to effectuate an investigative stop. Harrell v. Commonwealth, 30 Va. App. 398, 403, 517 S.E.2d 256, 258-59 (1999). "Once a police officer has properly detained a suspect for questioning he may conduct a limited pat-down search for weapons if he reasonably believes that the suspect might be armed and dangerous." Moore v. Commonwealth, 12 Va. App. 404, 406, 404 S.E.2d 77, 77 (1991) (quoting Williams v. Commonwealth, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987)). "The purpose of this 'pat-down' search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response." Murphy, 264 Va. at 573-74, 570 S.E.2d at 839.

If during a lawful pat-down for weapons of a suspect's outer clothing a police officer feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Minnesota v. Dickerson,

-

508 U.S. 366, 375-76 (1993).  "[I]f the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."  Id.

In the case before us, Officer O'Donnell conducted an unlawful search of Jones and unlawfully seized from his rear jeans pocket, a plastic bag containing what appeared to be nine rocks of crack cocaine.  There is no question that the initial stop of Jones was proper.  When Jones saw the police officer approaching him, he fled carrying a handgun in his right hand.  When apprehended by Officer O'Donnell, Jones lost possession of the weapon.  Another officer subsequently recovered it.  Officer O'Donnell testified that he handcuffed Jones and placed him in investigative detention.  Officer O'Donnell was clear in stating that Jones was not placed under arrest at that time.[5]

When asked at the suppression hearing why he conducted the search of Jones, Officer O'Donnell stated:

> Basically, the time of night, the numerous calls to the area about specifically drug dealing, the fact that [Jones] broke and ran at police presence and the fact that he had a firearm on his person -- well, in his hand as he ran.  Those things all together.  I believed - I was fairly certain that there were some types of narcotics or other illegal substance on his person.

---

[5] Since Jones was not under arrest at the time of the search, we need not determine whether the search was incident to a lawful arrest.

-

(Emphasis added).  Officer O'Donnell's stated intent in conducting a search of Jones was to recover narcotics or other illegal substances, not to determine whether Jones had additional weapons on his person.  We therefore conclude that Officer O'Donnell's actions exceeded the permissible scope of the limited search for weapons.

## B.  INEVITABLE DISCOVERY

The trial court incorrectly relied on the doctrine of inevitable discovery in reaching its decision regarding the issue of attempted possession of cocaine.  Application of the doctrine of inevitable discovery requires the Commonwealth to show three things:  (1) a reasonable probability that the evidence in question would have been discovered by lawful means, but for the police misconduct; (2) the leads making discovery inevitable were possessed by the police at the time of the misconduct; and (3) the police also prior to the misconduct were actively pursuing the alternative line of investigation.  Walls v. Commonwealth, 2 Va. App. 639, 656, 347 S.E.2d 175, 185 (1986).  The Commonwealth failed to prove the existence of these factors in this case.  There was no specific complaint concerning Jones, so there were no leads for the police to follow prior to the police misconduct.  In addition, Officer O'Donnell was not actively pursuing any alternative line of investigation.  The inevitable discovery cannot be the direct

-

result of the initial unlawful search, but rather must be independent of it.

We reverse the judgment of the trial court finding Jones guilty of attempted possession of cocaine and order the charge dismissed.

### III.  ADMISSION OF JUVENILE RECORDS

We next consider whether the trial court erred in admitting the juvenile petition and accompanying records.

> "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  "Evidence is admissible if it is both relevant and material."  Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).

Braxton v. Commonwealth, 26 Va. App. 176, 186, 493 S.E.2d 688, 692 (1997).

The Commonwealth offered as evidence a certified copy of a petition and accompanying papers from the Charlottesville Juvenile and Domestic Relations District Court.  The petition indicated that the records were those of James Sylvester Jones. However, the social security number was shown as unknown.  Jones contends that the Commonwealth failed to prove that the juvenile petition in fact pertained to him and as a result, should not have been admitted into evidence.  We disagree.

-

Officer O'Donnell testified that the petition and accompanying records were obtained using information provided by Jones. Jones supplied Officer O'Donnell with his name, date of birth, and social security number. With that information in hand, Officer O'Donnell obtained the petition and accompanying records. The trial court did not abuse its discretion in admitting the juvenile petition and accompanying records.

IV. POSSESSION OF A FIREARM BY A CONVICTED FELON

We lastly consider whether the evidence was sufficient to convict Jones of possessing a firearm after having been convicted of a felony.

> When the sufficiency of the evidence is challenged on appeal, it is well established that we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The conviction will be disturbed only if plainly wrong or without evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).

Code § 18.2-308.2 states in relevant part:

> A. It shall be unlawful for (i) any person who has been convicted of a felony or (ii) any person under the age of twenty-nine who was found guilty as a juvenile fourteen years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . to knowingly and intentionally possess or transport any firearm or to knowingly and intentionally carry it about his person . . . .

-

Jones contends that there was a fatal variance between the allegations in the indictment and the proof of the crime. He argues that the Commonwealth chose to prosecute him under Code § 18.2-308.2(A)(i). However, instead of attempting to prove a felony conviction under Code § 18.2-308.2(A)(i), the Commonwealth proceeded to prove a violation under Code § 18.2-308.2(A)(ii) without amending the charge. We disagree.

Jones was indicted under the broad provisions of Code § 18.2-308.2. He was given fair notice of the charges against him. He was put on notice that he would have to defend against being in possession of a weapon after having been convicted of either a felony or a delinquent act as a juvenile that would have been a felony if it had been committed by an adult. See generally Buchanan v. Commonwealth, 238 Va. 389, 397-98, 384 S.E.2d 757, 762-63 (1989). Thus, his argument is without merit. What remains to be determined is whether Jones was in possession of a weapon and whether the evidence was sufficient to prove beyond a reasonable doubt his status as a convicted felon. As to each issue, we answer in the affirmative.

At trial, Jones conceded the fact that he was in possession of a weapon when he encountered Officer O'Donnell. Furthermore, the evidence supported the trial court's finding that Jones was a person prohibited from possessing weapons within the statutory definition. The Commonwealth presented evidence that Jones was born on May 29, 1980. In addition, it presented evidence that

-

Jones was found guilty on a juvenile petition for unlawful wounding, a felony if committed by an adult.

An adjudicatory hearing was held on November 1, 1994. Jones entered a guilty plea that was accepted by the juvenile and domestic relations district court. The petition reflects a finding of guilty from which it can be reasonably inferred that the juvenile court found Jones guilty of the offense charged in the petition.

The Commonwealth presented evidence from which the court could reasonably conclude that Jones was under the age of twenty-nine when the present offense was committed and that he was fourteen years of age or older when adjudicated guilty of unlawful wounding, an offense that would have been a felony if committed by an adult. The evidence was sufficient beyond a reasonable doubt to convict Jones of a violation under Code § 18.2-308.2.

We affirm the judgment of the trial court finding Jones guilty of possessing a firearm after having been convicted of a felony.

## V. CONCLUSION

We find that the trial court erred in denying Jones' motion to suppress the evidence of the contraband seized from him. Accordingly, we reverse the judgment of the trial court and order the charge of attempted possession of cocaine be dismissed. We also find that the trial court did not err in

-

admitting Jones' juvenile records and, therefore, affirm the judgment of the trial court, admitting the evidence.  We further find that the evidence was sufficient beyond a reasonable doubt to convict Jones of possession of a firearm after having been convicted of a felony, and affirm the trial court's judgment of conviction.

<u>Affirmed in part, reversed and dismissed in part.</u>

-