COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Willis


ROSHAN BURNS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2523-04-2                      JUDGE WALTER S. FELTON, JR.
                                                         MARCH 8, 2005
CHARLOTTESVILLE DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                            Edward L. Hogshire, Judge

                 (William M. Marshall; Marshall & Marshall, P.C., on brief), for
                 appellant.  Appellant submitting on brief.

                 (Allyson Manson-Davies, Assistant City Attorney; Kelly Hobbs,
                 Guardian *ad litem* for the minor child; Dygert, Wright & Hobbs,
                 PLC, on brief), for appellee.  Appellee and Guardian *ad litem*
                 submitting on brief.


        On October 4, 2004, the trial court entered an order terminating the residual parental

rights of Roshan Burns to his daughter, T.B., pursuant to Code § 16.1-283(B) and (C).  On

appeal, Burns contends he was unable, due to his incarceration, to remedy the conditions leading

to T.B.'s placement in foster care, and the evidence was insufficient to prove by clear and

convincing evidence that termination was in T.B.'s best interests.  Burns also argues the trial

court erred in admitting hearsay evidence contained within the foster care service plans.  Finding

no error, we affirm the decision of the trial court.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

T.B. was born on January 30, 2003, to Shanique Briscoe and Burns. Shortly thereafter, the Charlottesville Department of Social Services (CDSS) received a report alleging Burns and Briscoe did not understand how to care for T.B. Jenny Watson, a social worker with CDSS, visited Burns and Briscoe at their apartment on February 4, 2003. Pursuant to an emergency safety plan devised on that date by CDSS, Burns, Briscoe, and T.B. were to live with Burns' mother until further plans could be made to assist them. However, Burns, Briscoe, and T.B. returned to their own apartment within a few days.

During the visit on February 4, 2003, Burns told Watson he had molested a female cousin who was between the ages of eight and eleven. The incident had occurred in New Jersey. Burns explained that his conduct was "okay" because the same thing had happened to him and it was not his fault. Burns was arrested upon a charge stemming from this admission on February 14, 2003. He was extradited to New Jersey, where he remained incarcerated at the time of the termination hearing on October 4, 2004. At the termination hearing, Burns' attorney admitted Burns had entered into a plea agreement regarding the charge, although no evidence was adduced concerning the status of Burns' sentencing.

Following the initial contact with Briscoe in February of 2003, CDSS continued to assist Briscoe in caring for T.B., instructing Briscoe on feeding, clothing, and bathing the baby. Briscoe possessed limited mental capabilities, however, and proved unable to retain the information or provide consistent care for T.B. T.B. entered foster care following the entry of a preliminary removal order on May 28, 2003.

Following T.B.'s removal, CDSS advised Briscoe, who went to live with her mother in New Jersey, that she was expected to complete a psychological evaluation. Briscoe did not complete all the components of the evaluation, however. Briscoe was unemployed and received disability benefits based upon her impaired cognitive skills. Briscoe visited T.B. only once, in June of 2003. None of T.B.'s relatives was interested in having, or was found suitable to have, custody of T.B.

From jail in New Jersey, Burns maintained occasional written contact with Melissa Ahrens, who wrote the foster care service plans admitted into evidence at Burns' termination hearing. Some of Burns' letters to Ahrens were threatening and inappropriate. Burns failed to comply with Ahrens' request to provide her with information regarding the status of the legal proceedings against him.

When she entered foster care, T.B. was underweight and had received little in the way of stimulation. With her foster family T.B. had gained weight, learned to walk, and was healthy and thriving. T.B. appeared to be ahead of her peers in the area of language development. T.B. had been fully integrated into the foster family, which had offered to adopt T.B. and provide a permanent home for her.

The trial court admitted in evidence the foster care service plans written by Aherns regarding T.B. The plans contained statements of fact Aherns had learned from various sources in her investigation of T.B.'s situation.

DISCUSSION

I.

Burns contends his incarceration prevented him from remedying the conditions leading to T.B.'s foster care placement. He also argues his incarceration, standing alone, did not demonstrate by clear and convincing evidence that termination was in T.B.'s best interests.[1]

Termination pursuant to Code § 16.1-283(C) requires proof that the parent, "without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to . . . the child's foster care placement . . . ." The statute contains no excuse for a failure to remedy such conditions where the parent has been incarcerated during the period the child was in foster care. Indeed, incarceration for the commission of an act of child sexual abuse hardly could be considered "good cause" for a failure to remedy the conditions leading to a foster care placement.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986). Moreover,

> while long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance

---

[1] Burns' argument on these contentions contains no citation to legal authority, other than to Code § 16.1-283, and is confined to three brief paragraphs which do nothing more than restate the issues. Such argument falls short of satisfying Rule 5A:20(e), which requires an appellant's brief to contain "[t]he principles of law, the argument, and the authorities relating to each question presented."

- 4 -

which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson v. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Considering all the facts and circumstances, CDSS proved by clear and convincing evidence that termination of Burns' parental rights was in T.B.'s best interests. At the time of the termination proceeding, Burns had been incarcerated for all but the first two weeks of T.B.'s life. During those two weeks, Burns did not demonstrate an ability to parent T.B., even refusing to follow the emergency safety plan provided by CDSS. There was no proof Burns would be released or able to resume care of T.B. in the near future. T.B. has remained in foster care since she was about four months old. During that time, she has grown and thrived. She has become integrated into her foster family, which is interested in adopting her.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (citation omitted). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Therefore, the trial court did not err in finding the evidence sufficient to support a termination of Burns' residual parental rights to T.B.

II.

Burns also contends the trial court improperly admitted into evidence hearsay statements contained within the foster care service plans. Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted." Garcia v. Commonwealth, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (*en banc*). In order for hearsay to be admissible, it must "come

within one of the many established exceptions to the general prohibition against admitting hearsay." Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992). "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

Assuming without deciding the foster care service plans contained hearsay evidence, the plans nonetheless were admissible pursuant to a statutory exception to the hearsay rule. Code § 8.01-390(A) provides:

> Copies of records of this Commonwealth . . . or of any political subdivision or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies either by the custodian thereof or by the person to whom the custodian reports, if they are different.

Aherns prepared the foster care service plans in the course of her duties as a social worker with CDSS, an agency of the Commonwealth. At the termination hearing, Aherns testified as a witness and authenticated the foster care service plans. The plans thus qualified for admission into evidence at the termination hearing pursuant to Code § 8.01-390(A). In any event, Burns thus had the opportunity to cross-examine Aherns about the contents of the plans, and her conclusions regarding T.B., at the termination hearing.

CONCLUSION

For the foregoing reasons, we affirm the trial court's decision to terminate Burns' residual parental rights to T.B.

Affirmed.