# COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

MICHAEL ALLEN CLARK, SR.

v.     Record No. 0301-21-4

CULPEPER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 17, 2021

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

(Christian A. Brashear, on briefs), for appellant.

(Shelia Jane Weimer, Senior Assistant County Attorney; Mary
McDaniel, Guardian *ad litem* for the minor children, on brief), for
appellee.

Michael Allen Clark, Sr. (father) appeals the circuit court's orders terminating his parental

rights to his children and approving the foster care goal of adoption. Father argues that the circuit

court erred in finding that there was sufficient evidence to support the termination of his parental

rights under Code § 16.1-283(C)(2) and that the termination was in his children's best interests. In

addition, father challenges the circuit court's approval of the foster care goal of adoption. Father

further contends that the circuit court abused its discretion by denying his continuance request.

Lastly, father asserts that the circuit court erred by not admitting a letter from his therapist. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Jennifer Rollins (mother) are the biological parents to the two children who are the subject of this appeal.[2] In November 2016, the Culpeper County Department of Social Services (the Department) removed the children, then ages nine months and four years, from mother's custody because of neglect and inadequate supervision, as well as the conditions of the home. In August 2018, the children returned to mother's care. The Department provided on-going therapeutic services to mother and the children.

On January 3, 2019, the Department received a report that mother had overdosed in front of the children. A protective order required mother to leave the home and have no unsupervised contact with the children. The children resided with their maternal grandmother.[3]

On February 5, 2019, the Department removed the children from the maternal grandmother's home after discovering that there was no running water or sewer. The Department found the home to be "unsanitary" and unsafe for the children. The JDR court

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Both parents have other children who are not the subject of this appeal.

[3] Father did not live with the children.

entered emergency removal orders and preliminary removal orders. Father was homeless at the time and, therefore, not a viable placement option.

The Department required father to participate in a parental capacity and psychological evaluation, which he completed in March 2019. The evaluator diagnosed father with post-traumatic stress disorder, various substance abuse disorders in early remission, and "(Rule Out) Unspecified Personality Disorder." Father admitted to an extensive history of substance abuse and that he had used marijuana to self-medicate, as recently as February 2019. The evaluator recommended that father be "monitored for drug use."

During the evaluation, father reported being homeless for "over twenty-seven years." The evaluator was concerned about father's lack of "housing, income, transportation, and access to healthy food." The evaluator recommended services to help father learn "effective ways of independent living," as well as nutrition services. The evaluator also suggested financial management counseling to assist with budgeting.

The evaluator found father to be "very paranoid," irritable, and easily frustrated; however, he also was "very attached to the kids with a genuine concern for their well-being." The evaluator recommended individual counseling to "address his long-standing trauma symptoms." The evaluator further suggested parenting classes and monitoring. The evaluator forewarned that "[t]oo much stress at once could trigger [father's] 'fight or flight' reactions that he tends to have during difficult situations, hindering his overall ability to parent effectively and safely." The evaluator concluded that father would need "a significant amount of support."

Considering the evaluator's recommendations, the Department referred father to outpatient therapy and medication management. Father participated in outpatient therapy every two weeks and was prescribed medication for his anxiety. The Department also requested that

father be screened for drugs.  Father was compliant with the drug screens, except in November 2019, when he refused a test.

In addition, the Department required father to obtain and maintain appropriate housing. The Department provided father with a housing voucher, which allowed him to obtain an apartment.  After a couple of months, however, he left the apartment because bed bugs from another apartment had infested his home.  Father was homeless for several months until he obtained a one-bedroom apartment in "June or July of 2020."

The Department also required father to demonstrate an ability to meet the children's needs financially.  Father explained that he bartered or panhandled for goods and services to meet his needs.  Father did not have a reliable source of income to support the children, although he reportedly had applied for Social Security disability.

The Department also provided father with supervised visitation.  Because father is a registered sex offender, the Department had to ensure that his visitations did not violate his offender restrictions.  For example, father could not visit the children at parks.  The Department had arranged for a third party to supervise the visits; however, father "fired" the supervisor, which interrupted his weekly visitations.  The Department ultimately supervised the visits and found father to be "very pleasant" and appropriate with the children.  The Department had to suspend in-person visitations because of the COVID-19 pandemic but allowed virtual visits. Initially, father participated in the virtual visits, but he later "fired" another supervisor over a misunderstanding with scheduling.  Beginning in July 2020, the Department gave father the option of resuming in-person visits.  The Department informed father that the visits would be at the Department's "little playground area" outside, and there would be certain restrictions due to the COVID-19 pandemic.  Father became upset with the Department's conditions and stated that

"all visitation was canceled until a court hearing could be heard." Father's visitation never resumed.

On August 31, 2020, the JDR court terminated father's parental rights and approved the foster care goal of adoption.[4] Father appealed the JDR court's rulings to the circuit court. Father's appeal was scheduled to be heard on November 30, 2020. After the circuit court granted father's request to appear telephonically, father chose to appear in person. Father, however, arrived late during the Department's examination of its first witness.

The Department presented evidence that the children had been in the same foster home since their removal. The foster mother described the children as "very needy" and requiring "a lot of attention." The younger child had "really severe temper tantrums," and the older child had "anger issues."

The Department arranged for outpatient therapy and intensive in-home services for the children. In early 2019, the children started therapy to address their anxiety and trauma. The therapist diagnosed both children with post-traumatic stress disorder. The therapist found that the older child's behavior "ebbs and flows," but his self-esteem and coping skills had "definitely improved." The therapist found that the younger child had "gained a great deal of functioning" and was "a lot less anxious." The therapist opined that the children would continue to need counseling.

The therapist testified that the older child viewed father as "a fun uncle," and neither child considered him to be their father. The therapist found that the children were not attached to father and did not "really talk that much about him." After the therapist described father's visits as "play times" and that the children "could take it or leave it," father requested a continuance so

_____

[4] The JDR court also terminated mother's parental rights, and mother appealed the JDR court's rulings to the circuit court. At the beginning of the circuit court hearing, mother withdrew her appeals and signed entrustment agreements.

that he could obtain videotapes of his visits with the children. Father believed that his visits were being "mischaracterized." The Department explained that any visits after October 2019 were not recorded and was unaware of whether previous visits had been recorded. The circuit court denied the continuance request and explained that father could testify and present evidence about the visitations. Father became upset and asked to leave the proceedings. After a short recess, father chose to leave the courthouse; father's guardian *ad litem* remained and participated in the rest of the hearing.

The Department presented evidence that father continued to live in his one-bedroom apartment. Father told the Department that if the children were to live with him, he would "partition it off to . . . make room and stuff for the children." He also had done "odd jobs in the community," but he did not have a consistent source of income.

At the conclusion of the Department's evidence, father's guardian *ad litem* sought to admit a letter from father's therapist, who was not present at the hearing "because of prior commitments he had in therapy." The Department and the children's guardian *ad litem* objected to the letter. The Department, however, agreed to father's proffer that the therapist would testify that father had "some parental skills." The circuit court sustained the objection to the admission of the letter.

After hearing the parties' arguments, the circuit court took the matter under advisement. On January 5, 2021, the circuit court issued a letter opinion. The circuit court noted that it had allowed father to appear telephonically, but he appeared in person "some time after the hearing started and left abruptly during the Department's case-in-chief prior to the hearing's conclusion." The circuit court found that the children had been "in foster care for 668 days without interruption" as of the date of the hearing. The circuit court further found that father had not substantially remedied the conditions leading to the children's placement, and continuation, in

foster care. In addition, the circuit court found that the Department had "provided more than reasonable and appropriate efforts focused on assisting [father] with remedying the issues that required the foster care placement," but father was not cooperative with the services. The circuit court concluded that termination of father's parental rights was in the best interests of the children.

On January 25, 2021, the circuit court entered the orders terminating father's parental rights under Code § 16.1-283(C)(2) and approving the foster care goal of adoption. This appeal followed.

ANALYSIS

Termination of parental rights

Father argues that the circuit court erred in terminating his parental rights under Code § 16.1-283(C)(2) and finding that termination was in the children's best interests.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the

> reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Father emphasizes that he did not create the situation that led to the children's placement in foster care. His lack of stable housing and employment, however, led to the children's continuation in foster care. At the time of the circuit court hearing, father had a one-bedroom apartment, but the circuit court found that father "presented no evidence about the apartment, including, without limitation, whether the children would be allowed to live at the apartment under the lease, and the condition of the apartment." Furthermore, father presented no evidence that he could meet the children's financial needs. The circuit court found that father had "no meaningful employment and barter[ed] for goods."

Although father completed some of the Department's requirements, including a psychological and parenting evaluation and outpatient therapy, he did not cooperate with all the required services. For example, father refused to participate in a follow up parental capacity evaluation to assess his progress. Father also refused a drug screen in November 2019. Despite participating in supervised visitations with the children, father "fired" two supervisors and unilaterally ceased visitations because he did not want to follow the Department's COVID-19 related rules.

The children were four and eight years old at the time of the circuit court hearing. They had been in foster care for 668 days. The circuit court heard evidence that father's visits with the children were appropriate, but the children viewed them as "play times" and were not attached to father. Father's visits never progressed to unsupervised or overnight visits. Moreover, the

children's therapist testified that the children suffered from post-traumatic stress disorder and would need continued therapy in the future. Father was not in a position to care for the children and their special needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the evidence, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2) and finding that termination was in the children's best interests.

Adoption

Father argues that the circuit court erred in approving the foster care goal of adoption. "Our decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

Continuance request

Father argues that the circuit court erred in denying his continuance request to obtain videotapes of his visits with the children. Father contends that the videotapes "would have shown how the visits truly progressed, rather than relying on third party summaries and accounts from the two (2) young children as filtered through [the] therapist."

"The decision of whether to grant a continuance is committed to the discretion of the circuit court." Shah v. Shah, 70 Va. App. 588, 593 (2019). "A party challenging a circuit court's denial of a motion for a continuance must demonstrate both an 'abuse of discretion *and* resulting prejudice[.]'" Bailey v. Commonwealth, 73 Va. App. 250, 265 (2021) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007)). "The abuse of discretion

standard 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" Id. (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)). "[W]e do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Id. (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)).

The circuit court did not abuse its discretion in denying the motion for a continuance. Father requested the continuance in the middle of the hearing so that he could "get the videotapes of each visit to present to the [circuit court]." He alleged that his visits with the children were "being mischaracterized," but he did not expand on this assertion. Father "believe[d]" that the videotapes were in the Department's possession and admitted that it "would take some time to get them, to go through them, and to present them in proper form."

The Department and the children's guardian *ad litem* objected to the continuance. The Department stated that no visits after October 2019 were videotaped, and neither the Department nor the guardian *ad litem* were aware of any videotapes for prior visits. The circuit court accepted the Department's and the guardian *ad litem*'s proffers that "there's really no video to see."

The circuit court found that father, "if he chooses, can certainly put on evidence that would include, but not be limited, to his testimony, testimony of witnesses who were present at the . . . visitation." The circuit court also considered that the case had "been set within the ninety (90) day window, as it should have been by statute," and that it did "not have the time on its docket to just recess the case for a great length of time to allow additional discovery to ensue." Father objected to the circuit court's denial of his motion. The circuit court reminded father that he would "be given an opportunity, at the appropriate time, to present witnesses and evidence . . . ." Notwithstanding the circuit court's reminder that father could testify, father left

the courtroom and did not testify. Considering the Department's and the guardian *ad litem*'s proffers about the videotapes and father's opportunity to present evidence, the circuit court did not abuse its discretion in denying the requested continuance.

Admissibility of evidence

Father argues that the circuit court erred in not admitting the letter from his therapist. "'[T]he admissibility of evidence "is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion."'" Castillo, 68 Va. App. at 558 (quoting Surles v. Mayer, 48 Va. App. 146, 177 (2006)).

Father offered a letter from his therapist as a substitute for his testimony because his therapist was unavailable to testify due to prior work commitments. The Department and the children's guardian *ad litem* objected to the therapist's letter based on hearsay grounds. After reviewing the letter, the circuit court found that it was "classic hearsay" and noted that it would be "difficult, probably impossible . . . to cross-examine a piece of paper."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is not admissible except as provided by these Rules, other Rules of the Supreme Court of Virginia, or by Virginia statutes or case law." Va. R. Evid. 2:802. "[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility." Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 9 (2005) (quoting Braxton v. Commonwealth, 26 Va. App. 176, 183-84 (1997)). To be admissible, hearsay "must 'come within one of the many established exceptions to the general prohibition against admitting hearsay.'" Id. at 8-9 (quoting Hanson v. Commonwealth, 14 Va. App. 173, 187 (1992)).

Virginia Rule of Evidence 2:804 provides for hearsay exceptions when the declarant is unavailable. "[T]o be 'unavailable,' Virginia recognizes the need for the proponent of hearsay

evidence to have made 'a good-faith effort' to obtain the presence of the declarant to provide live testimony at trial." Bailey v. Commonwealth, 62 Va. App. 499, 508 (2013) (quoting Bennett v. Commonwealth, 33 Va. App. 335, 347-48 (2000) (*en banc*)).

The record does not reflect that father subpoenaed his therapist for the hearing. Therefore, he did not make a "good-faith effort" to compel his therapist's presence. Id. The circuit court did not err in refusing the exhibit and finding that none of the hearsay exceptions applied to the letter.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.