COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia

JUSTO MAZARIEGOS CAMPOS

v.      Record No. 0617-16-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE GLEN A. HUFF
JUNE 13, 2017

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Joel C. Cunningham, Judge

Brendan U. Dunning (Law Office of Brendan U. Dunning, P.C., on
brief), for appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Justo Mazariegos Campos ("appellant") appeals his convictions of aggravated sexual

battery by a parent, in violation of Code § 18.2-67.3(A)(3); carnal knowledge of a child, in

violation of Code § 18.2-63; taking indecent liberties with a child, in violation of Code

§ 18.2-370; and object sexual penetration, in violation of Code § 18.2-67.2.  Following trial in

the Circuit Court of Halifax County ("trial court"), appellant was sentenced to twenty-nine years'

imprisonment.  On appeal, appellant contends that the trial court "abused its discretion by

allowing into evidence testimonial statements to a medical provider which were not limited to

statements of symptoms or medical history."  For the following reasons, this Court affirms

appellant's convictions.

I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

The victim in this case, C.F., was four years old when appellant began dating Stacey Campos, C.F.'s mother, in 2006. From when C.F. first met appellant until after Stacey and appellant married in 2008, appellant acted as a father figure for C.F. and had authority to instruct her and discipline her for disobedience.

In 2012, C.F. reported to Stacey that appellant had sexually abused her, but when Stacey confronted appellant, he denied it. Stacey then told C.F. that she did not believe her report, and C.F. recanted.

One year later, C.F. again reported that appellant had sexually abused her. Stacey took C.F. to Lynchburg General Hospital on August 10, 2013, where Donna Kling, a forensic nurse examiner, examined C.F. At this point, the Department of Social Services became involved and Stacey took out a protective order against appellant. Even after these events, Stacey again told C.F. that she did not believe her, and following a heated argument, C.F. again recanted. The protective order was then dismissed at Stacey's request.

Another incident occurred on October 6, 2014. While Stacey was at work, appellant asked C.F. to enter the bedroom and wait. Appellant entered, and pulled down C.F.'s pants and underwear as well as his own pants. Appellant's penis touched C.F.'s vagina and was "moving up and down." Appellant persisted even after C.F. told him to stop, and she felt his penis enter between her labia. When he finished, appellant instructed C.F. to go to bed.

Stacey took C.F. to Lynchburg General Hospital on October 10, 2014, where C.F. was again examined by Kling. That evening, Stacey received two calls from appellant during which appellant told her, "I'm sorry, I'm sorry for hurting you and your daughter."

A grand jury indicted appellant for eight sexual offenses. At trial, the Commonwealth called Kling, and appellant stipulated to Kling's certification as an expert "in child sexual assaults and forensic evaluations." During direct examination, the Commonwealth asked Kling to tell the jury about her interview with C.F., to which counsel for appellant objected on hearsay and Confrontation Clause grounds. Arguing outside the presence of the jury, counsel for appellant contended that Kling's testimony regarding C.F.'s statements constituted testimonial hearsay and violated Crawford v. Washington, 541 U.S. 36 (2003). Counsel also argued that C.F.'s hearsay statements would not fall under the medical treatment exception to the hearsay rule, Virginia Rule of Evidence 2:803(4). The trial court overruled appellant's objections, finding that Kling's statements were not testimonial and fell within the hearsay exception because Kling's goal in interviewing C.F. was to diagnose and treat C.F. Additionally, the trial court reasoned that C.F.'s motivation had not been to provide evidence for the Commonwealth.

The Commonwealth then had Kling "quote word for word" from her notes of the October 10, 2014 interview with C.F.[1]:

> I asked, "Tell me about why you came to see me today."
> [C.F.] stated, "My stepdad was raping me."
> I asked, "What does that mean?"
> [C.F.] stated, "He was touching my private area and having sex with me."
> I asked, "Tell me more about that."
> [C.F.] stated, "He would make me lay on my mom's bedroom floor. He took my pants and underpants off and he put his thing on my private."
> I asked, "What is his thing?"
> [C.F.] stated, "His wee wee."
> I asked, "Did he put it on top of your privates or inside your privates?"
> [C.F.] stated, "I don't really know because I wouldn't pay attention because I wouldn't like what he was doing."
> I asked, "When he put his wee wee on top of your privates, what would he do?"

---

[1] Only the October 10, 2014 interview with Kling is relevant to the convictions appealed here because the jury acquitted appellant of all charges arising from the 2013 incidents.

- 3 -

[C.F.] stated, "He would move it around."

I asked, "Did anything ever come out of his wee wee?"

[C.F.] stated, "When I push him away, he would get back on me and when stuff came out, it went everywhere."

I asked, "What did the stuff look like?"

[C.F.] stated, "It was white."

I asked, "Where did it go?"

[C.F.] stated, "On the floor, on my legs, and on him."

I asked, "Did anyone clean it up?"

[C.F.] stated, "He would. He would clean it off of me."

I asked, "Did that happen one time or more than one time?"

[C.F.] stated, "More than one time."

I stated, "Tell me about the first time."

[C.F.] stated, "It's been a while. He's been doing it a lot."

I asked, "When was the last time?"

[C.F.] stated, "Monday."

I asked, "What time on Monday?"

[C.F.] stated, "After my mom went to work. I went to go to bed and he grabbed my arm. He put me on the couch for a while because my nanny was there. He told me to go into my mom's bedroom and take my pants off."

I asked, "Where was nanny then?"

[C.F.] stated she went to her room. "He came back there. He took his pants off. He got on top of me. I pushed him away because something had hurt."

I asked, "Where did it hurt?"

[C.F.] stated, "In my private. I told him to stop but he said no. After he finished, he got up and went in the bathroom."

I asked, "Did anything come out of his wee wee that day?"

[C.F.] stated, "No."

I asked, "What did he do when he got on top of you?"

[C.F.] stated, "He started moving going up and down."

I asked, "Was that on the outside of your private or on the inside of your private?"

[C.F.] stated, "I know it went on the inside but I don't know if it went in me."

I asked, "Did you have any pain or bleeding?"

[C.F.] stated, "I had pain but not bleeding."

I asked, "Did you ever have bleeding when he would do this?"

[C.F.] stated, "No."

I asked, "Did he wipe you off with anything on Monday?"

[C.F.] stated, "No."

I asked, "What were you wearing?"

[C.F.] stated, "Blue shorts and a Subway T-shirt."

I asked, "Did you have underpants on?"

[C.F.] stated, "Yes."

I asked, "Have they been washed?"

[C.F.] stated, "Yes."
I asked, "Were you on the floor on Monday?"
[C.F.] stated, "Yes."
I asked, "What kind of floor?"
[C.F.] stated, "Carpet."
I asked, "Were you on top of the carpet, a blanket, or something else?"
[C.F.] stated, "No, it was right on the carpet."
I asked, "Where exactly on the floor were you?"
[C.F.] stated, "At the foot of her bed."
I asked, "Tell me about the last time before Monday."
[C.F.] stated, "Sunday when my mom leaves for work."
I asked, "What happened that day?"
[C.F.] stated, "I can't remember."

Later during direct examination, the Commonwealth asked Kling whether C.F. indicated that appellant had threatened her. Kling testified that C.F. had spontaneously volunteered during the interview that "[a]fter [C.F.'s] mom pawned one of [appellant's] guns, he bought a nine millimeter and said if [C.F.] told anybody, he was going to kill [her]." The Commonwealth ended its direct examination there, and counsel for appellant cross-examined Kling.

The Commonwealth also called C.F. to testify in its case-in-chief. On cross-examination, counsel for appellant read to C.F. a portion of the interview transcript between her and Kling, and C.F. agreed that the transcript accurately reflected what she said. Counsel for appellant impeached C.F. by comparing those statements to other statements C.F. made to an investigator regarding the same events; C.F. agreed that she had made the inconsistent statements to the investigator. C.F. also repeatedly testified that she could not remember certain conversations or events about which counsel for appellant asked her.

Following C.F.'s testimony, appellant moved to strike the Commonwealth's evidence and for a mistrial, both of which the trial court denied. After presenting defense evidence, appellant renewed his motions to strike, which the trial court denied. This appeal followed.

- 5 -

## II. STANDARD OF REVIEW

"Appellate courts review evidentiary rulings under an abuse of discretion standard." Boone v. Commonwealth, 63 Va. App. 383, 388, 758 S.E.2d 72, 75 (2014) (citing Boyce v. Commonwealth, 279 Va. 644, 649, 691 S.E.2d 782, 784 (2010)). Under this deferential standard, a "trial judge's ruling will not be reversed simply because an appellate court disagrees;" only in those cases where "reasonable jurists could not differ" has an abuse of discretion occurred. Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). Constitutional arguments, however, "present questions of law that this Court reviews *de novo*." Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

Additionally, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (2004) (*en banc*). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975).

## III. ANALYSIS

Appellant raises both Confrontation Clause and hearsay arguments, which this Court addresses in turn.

### A. Confrontation Clause

Appellant first contends that C.F.'s statements recounted during Kling's testimony constituted testimonial hearsay that violated his Sixth Amendment right to confrontation. Because C.F. actually testified and faced cross-examination by appellant, this Court holds that appellant's rights under the Confrontation Clause were not violated.

The United States Supreme Court has held that for testimonial hearsay to be introduced against a defendant at trial, the Sixth Amendment requires that the declarant be unavailable to testify at trial and that the accused had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68 (2004). Crucially, however, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)). As such, "Crawford confirms the traditional view that the Confrontation Clause 'does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.'" Blackman v. Commonwealth, 45 Va. App. 633, 644, 613 S.E.2d 460, 466 (2005) (quoting Crawford, 541 U.S. at 59 n.9).

In this case, C.F.—the declarant of the challenged statements recounted by Kling— testified at appellant's trial and was actually cross-examined by appellant. Appellant specifically inquired about C.F.'s prior statements to Kling during cross-examination and impeached C.F.'s testimony using those statements. Such an examination is the epitome of the confrontation right enshrined in the Sixth Amendment.

Appellant additionally contends that C.F.'s faulty memory at trial rendered her *de facto* not present for Sixth Amendment purposes, thereby denying him effective confrontation. This argument is without merit. "[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Abney v. Commonwealth, 51 Va. App. 337, 350, 657 S.E.2d 796, 802 (2008) (quoting United States v. Owens, 484 U.S. 554, 559 (1988)); see also Green, 399 U.S. at 157 ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause."). Witnesses commonly testify that they do not recall certain details or events, and to the extent a witness' lapses in

memory all favor one side, that witness is subject to attacks on credibility. Massey v. Commonwealth, 67 Va. App. 108, 134, 793 S.E.2d 816, 829 (2016). Appellant made just such an attack in this case by using contradictions between C.F.'s statements to Kling and her statements about the same events to an investigator to impeach her credibility. "That this credibility attack did not result in an acquittal does not mean that appellant was denied his right of cross-examination." Id. Accordingly, the trial court correctly found that C.F.'s statements to Kling did not violate appellant's Confrontation Clause rights.[2]

### B.  Hearsay

Appellant next argues that, notwithstanding the Confrontation Clause, the trial court improperly admitted C.F.'s statements to Kling because they did not fall within Virginia's hearsay exception for statements made for purposes of medical treatment. For the reasons that follow, this Court affirms the trial court's ruling.

"The common law definition of hearsay evidence is 'testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Commonwealth v. Swann, 290 Va. 194, 197, 776 S.E.2d 265, 268 (2015) (quoting Jenkins v. Commonwealth, 254 Va. 333, 338, 492 S.E.2d 131, 134 (1997)); see also Va. R. Evid. 2:801(c) (defining "hearsay"). "A hearsay objection lies against the admission of written statements which were made out of court and are offered for the truth of what they say." Arnold v. Wallace, 283 Va. 709, 713, 725 S.E.2d 539, 541 (2012); see also Va. R. Evid. 2:802. As the

---

[2] That C.F. was present at trial and subject to cross-examination was sufficient to satisfy the Confrontation Clause requirements. In light of this holding, this Court need not address whether C.F.'s statements to Kling were testimonial. See, e.g., Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (observing that the doctrine of judicial restraint requires appellate courts to "decide cases 'on the best and narrowest ground[] available'" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

Commonwealth correctly concedes, C.F.'s statements made to Kling constituted hearsay because they were offered at trial for their truth.[3]

"[H]earsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and . . . the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." Godoy v. Commonwealth, 62 Va. App. 113, 119, 742 S.E.2d 407, 410-11 (2013) (quoting McDowell v. Commonwealth, 48 Va. App. 104, 109, 628 S.E.2d 542, 544 (2006)). As such, the Commonwealth bore the burden of demonstrating that C.F.'s statements to Kling fit within Virginia's medical treatment exception to the rule against hearsay. That exception is now codified at Virginia Rule of Evidence 2:803(4):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> *Statements for purposes of medical treatment.* — Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The Commonwealth observes on brief that "[t]his hearsay exception resembles the one in Federal Rule of Evidence 803(4)" and relies heavily on federal case law in its argument.[4]

---

[3] This Court is "not bound by concessions of law by the parties." Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007).

[4] Current Federal Rule of Evidence 803(4) states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .

Despite their superficial similarity, however, the Virginia and Federal Rules of Evidence are

distinct bodies of law such that federal evidentiary principles may be inapplicable to cases

arising under Virginia law.

1.  The scope of the Virginia Rules of Evidence

The Federal Rules of Evidence are essentially statutes enacted by Congress, whereas the

Virginia Rules of Evidence are a codification of Virginia's evidentiary case law.  See George

Fisher, Evidence 3 (3d ed. 2013); Charles E. Friend & Kent Sinclair, The Law of Evidence in

Virginia § 1.2[b] (7th ed. 2012).

> Unlike the federal rules, the Virginia codification project was
> solely intended as a codification of Virginia's existing common
> law of evidence.  Consequently, while the Federal Rules of
> Evidence were intended to sweep away federal common law
> doctrine and occupy the field of non-constitutional, federal
> evidence law, Virginia's codification project was less ambitious.

---

> *Statement Made for Medical Diagnosis or Treatment*. A statement
> that:
>
> (A)  is made for—and is reasonably pertinent to—medical
>        diagnosis or treatment; and
> (B)  describes medical history; past or present symptoms or
>        sensations; their inception; or their general cause.

Notably, Federal Rule 803(4) prior to the 2011 restyling is identical to current Virginia
Rule 2:803(4):

> The following are not excluded by the hearsay rule, even though
> the declarant is available as a witness:
>
> . . . .
>
> *Statements for purposes of medical diagnosis or treatment*.
> Statements made for purposes of medical diagnosis or treatment
> and describing medical history, or past or present symptoms, pain,
> or sensations, or the inception or general character of the cause or
> external source thereof insofar as reasonably pertinent to diagnosis
> or treatment.

- 10 -

Jeffrey Bellin, The Virginia and Federal Rules of Evidence 3 (2015). Virginia Rule of Evidence

2:102 explains that the Virginia rules do not alter existing evidentiary doctrine or the viability of

case law in existence prior to July 1, 2012, when they came into effect:

> These Rules state the law of evidence in Virginia. They are
> adopted to implement established principles under the common
> law and not to change any established case law rendered prior to
> the adoption of the Rules. Common law case authority, whether
> decided before or after the effective date of the Rules of Evidence,
> may be argued to the courts and considered in interpreting and
> applying the Rules of Evidence. As to matters not covered by
> these Rules, the existing law remains in effect. Where no rule is
> set out on a particular topic, adoption of the Rules shall have no
> effect on current law or practice on that topic.

Va. R. Evid. 2:102; see also Creamer v. Commonwealth, 64 Va. App. 185, 199, 767 S.E.2d 226,

232 (2015) (holding Rule 2:102 requires that codified evidence rules must be interpreted in a

manner giving effect to prior case law).

"When the Rules of Evidence plainly address the substance of an evidence doctrine, or

state a factor, element or requirement, they are Rules of Court and binding on those issues.

However, they are intended to be compatible with and to restate existing doctrine." Friend &

Sinclair, supra, § 1-2[b]. The Virginia rules' status as both rules of court and a codification of

preexisting case law can create confusion when the plain language of a codified rule appears to

extend beyond mere codification. See, e.g., Bellin, supra, at ii ("[D]epatures from the

pre-codification case law create uncertainty as to the content of the 'real' Virginia evidence rule:

is it the codified rule or the rule that appeared in the pre-codification case law?"). Professor

Bellin specifically references Rule 2:803(4) as an example of a codified rule that "is broader and,

in at least one respect, inconsistent with pre-codification case law." Id.; see also id. at 144

("[W]hile the Virginia Supreme Court's pronouncements on this exception are few, the extant

Virginia case law seems significantly narrower than the codified rule.").

In fact, only three Supreme Court opinions appear to discuss the medical treatment exception, and none of them interpret the exception as codified in the Virginia Rules of Evidence. This Court must therefore review these cases, which are cited in the Virginia codification commentary to support Rule 2:803(4), before interpreting that rule in order to give effect to precedent for the medical treatment exception.

2. The medical treatment exception prior to codification

The Supreme Court first recognized something approaching the medical treatment exception in Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1987). The contested evidence in that case was a physician's testimony regarding his examination and treatment of two fourteen-year-old girls who had been sexually assaulted. Id. at 517, 248 S.E.2d 785. Over objection, the trial court permitted the physician to repeat the girls' statements about how they were attacked and their description of the assailant, as well as to offer his own conclusion that the girls had been raped. Id. at 518, 248 S.E.2d 785. On appeal, the Commonwealth acknowledged that the statements were hearsay but contended "that the statements were admissible under the exception to the hearsay rule which permits a physician to testify to a patient's statements concerning his 'past pain, suffering and subjective symptoms' to show 'the basis of the physician's opinion as to the nature of the injuries or illness.'" Id. at 518, 248 S.E.2d at 785-86. The Court "acknowledge[d] the exception to the hearsay rule espoused by the Attorney General," but held that it did not apply to the testimony in dispute, which went "beyond a recital of 'past pain, suffering and subjective symptoms.'" Id. at 518, 248 S.E.2d at 786. The Court went on to discuss the exception and limitations on expert testimony regarding an ultimate issue before concluding:

> [W]hile it was proper to permit [the physician] to testify to the
> victims' complaints that they had been raped and to state his
> observations of the girls' physical and emotional conditions, it was
> improper to permit him to recite the details of the offenses and the

- 12 -

description of the assailant, as reported to him by the victims. It was proper also to permit the doctor to state what examinations and tests he performed upon the victims and what medical conclusions he reached as a result. But it was improper to permit the doctor to express his opinion [on the ultimate issue] that the girls had been raped.

Id. at 519, 248 S.E.2d at 786.

Then in Jenkins v. Commonwealth, 254 Va. 333, 492 S.E.2d 131 (1997), the Court addressed whether the exception recognized in Cartera is, in fact, the same exception now codified in Rule 2:803(4). There, a psychologist testified over hearsay objections regarding a two-year-old child's statements that he had been "sexed" as well as his body movements and indications toward his groin area when asked what the term meant. Id. at 338, 492 S.E.2d at 134. The Court held that the hearsay exception recognized in Cartera was inapplicable because, "as in Cartera, the child's statement to the psychologist went 'beyond a recital of "past pain, suffering and subjective symptoms"'" and instead was evidence of an act "that was an essential element of the offense charged against the defendant" not subject to that hearsay exception. Id. at 339, 492 S.E.2d at 134 (quoting Cartera, 219 Va. at 518, 248 S.E.2d at 786).

The Court then went on to address a second argument for admissibility:

> The Commonwealth contends that we should apply the hearsay exception extended in some jurisdictions to statements made by a patient to a treating physician. As the Commonwealth recognized on brief, "many of these out-of-state cases are partially based on their state's adoption of rules equivalent to Federal Rule of Evidence 803(4)."
> *Neither this Court nor the General Assembly has adopted any such rule*. The rationale for such an exception is that a patient making a statement to a treating physician recognizes that providing accurate information to the physician is essential to receiving appropriate treatment. Because the patient in this case was a two-year old child who could not appreciate the need for furnishing reliable information, *we decline to apply the exception here*.

- 13 -

Id. at 339, 492 S.E.2d at 134-35 (emphasis added) (citation omitted).  This passage suggests that the hearsay exception recognized in Cartera is distinct from that embodied in Federal Rule of Evidence 803(4), and recognizes that Virginia, at that time, had not yet adopted an analogous rule.

The Court most recently addressed the medical treatment exception in Lawlor v. Commonwealth, 285 Va. 187, 738 S.E.2d 847 (2013).  In that case, the defendant sought to introduce statements made during an alcohol and drug dependency evaluation conducted while the defendant was incarcerated, including the defendant's statements that he had been sexually abused as a child.  Id. at 242, 738 S.E.2d at 879.  Much as in Jenkins, the Court reviewed this argument using two different rules.  First, it noted that "[w]e have acknowledged that 'a physician [may] testify to a patient's statements concerning his "past pain, suffering and subjective symptoms" to show "the basis of the physician's opinion as to the nature of the injuries or illness."'"  Id. at 243, 738 S.E.2d at 879 (quoting Cartera, 219 Va. at 518, 248 S.E.2d at 785-86) (citing Jenkins, 254 Va. at 339, 492 S.E.2d at 134).  The Court declined to apply this rule because the person who provided the assessment was not a physician or even a licensed substance abuse counselor.  Id.

Second, the Court considered a rule analogous to Rule 2:803(4):

> [A] statement made for the purpose of medical diagnosis or treatment in contravention of the hearsay rule is admissible because "a patient making a statement to a treating physician recognizes that providing accurate information to the physician is essential to receiving appropriate treatment."  The exception therefore includes an assessment of reliability.  However, as the circuit court noted, [an inmate seeking drug counseling has less incentive to be truthful than someone seeking medical treatment from a physician].
> Accordingly, the rationale underlying the medical diagnosis or treatment exception does not apply to substance abuse assessments in the context of incarceration.

Id. at 243-44, 738 S.E.2d at 879 (quoting Jenkins, 254 Va. at 339, 492 S.E.2d at 134-35).  Thus, as in Jenkins, the Court analyzed a Rule 2:803(4)-like medical treatment hearsay exception on the merits and declined to apply it because the facts indicated that the challenged statements were unreliable.

Several general principles can be drawn from these cases.  There are two distinct exceptions to the hearsay rule in the medical treatment context.  One is the rule first recognized in Cartera and referenced again in Jenkins and Lawlor that a patient's statements regarding past pain, suffering, and subjective symptoms are admissible to show the basis of the physician's opinion.  This rule is not technically an exception to the hearsay rule; instead, it sets forth a nonhearsay use for such statements:  to show the basis of a physician's opinion rather than for the statements' truth.  Under this rule, the statements are admissible for that purpose.  The other rule, initially referenced in Jenkins and further interpreted in Lawlor, is essentially the pre-codification Rule 2:803(4).  Those cases acknowledge a true hearsay exception that permits a hearsay statement made for the purpose of medical diagnosis or treatment to be introduced for its truth.

Applying the rationale of Virginia's precedent, reliability is the touchstone for determining admissibility of a patient's out-of-court statements that are made for diagnosis and treatment purposes.  In both Jenkins and Lawlor, the Court declined to apply the medical treatment exception because their respective facts suggested inherent unreliability:  the two-year-old child in Jenkins was too young to "appreciate the need for furnishing reliable information," 254 Va. at 339, 492 S.E.2d at 135; the incarcerated defendant in Lawlor would not be as honest in his potentially punishment-reducing conversation with a drug treatment counselor as he would be in seeking medical treatment from a physician, 285 Va. at 243, 738 S.E.2d at 879.  As suggested by the analysis in these cases, the rule's emphasis on reliability requires a court to

- 15 -

focus on the declarant's motive rather than that of the care provider. As the Court in <u>Jenkins</u> and <u>Lawlor</u> recognized, the reason statements made for the purpose of medical diagnosis or treatment are admissible despite their nature as hearsay is that patients making such statements recognize that they must provide accurate information to the physician in order to receive effective treatment. <u>Lawlor</u>, 285 Va. at 243, 738 S.E.2d at 879 (citing <u>Jenkins</u>, 254 Va. at 339, 492 S.E.2d at 134-35).

With these principles in mind, this Court now turns to the application of Rule 2:803(4) to the facts of this case.

### 3. Rule 2:803(4) applied to this case

In light of Rule 2:102, this Court must give effect to the precedent outlined above in interpreting current Rule 2:803(4). Rule 2:803(4)'s first clause requires that the statements be made "for purposes of medical diagnosis or treatment," which is entirely consistent with the prior case law. It next sets forth three types of statements admissible when reasonably pertinent to diagnosis or treatment: those relating to (1) medical history, (2) past or present sensations, and (3) inception or general cause of the condition. A final requirement implicit in Virginia's precedent is that there must be sufficient indicia of the statement's reliability for it to fall within the exception. In sum, for a hearsay statement to be admissible under Virginia Rule 2:803(4), the declarant must make it for purposes of medical diagnosis or treatment, it must fit at least one of the three types of admissible statements and be reasonably pertinent to diagnosis or treatment, and it must be reliable.

In this case, the trial court made a factual finding that C.F.'s statements to Kling were for the purpose of receiving medical diagnosis and treatment. This finding was supported by the evidence. For instance, C.F. characterized her 2014 meeting with Kling as the time she "went to the doctors," and that while there, Kling "did tests on [her]." No evidence in the record suggests

- 16 -

that C.F. had any purpose in speaking with Kling other than seeking treatment; nothing indicates she was aware that appellant would be prosecuted for his actions or that anything she said to Kling might be used in litigation.  The first element of Rule 2:803(4) is therefore satisfied.

C.F.'s statements fall into two of the three permissible categories of statements:  those concerning medical history and those regarding the general character or cause of her condition.  The essential question is whether her statements were reasonably pertinent to diagnosis or treatment.  As an initial matter, there is no dispute that Kling's duties as a sexual assault nurse examiner involved forensic investigation.  In her testimony, Kling characterized herself as a "forensic nurse examiner" whose duties involved documenting the history of sexual assault incidents, including recording findings observed during a head-to-toe physical examination as well as vaginal and anal examinations.  This investigative purpose, however, does not preclude Kling's examination of C.F. from also having medical diagnostic and treatment purposes.  See Sanders v. Commonwealth, 282 Va. 154, 166, 711 S.E.2d 213, 219 (2011) (recognizing that medical examinations can serve a "dual purpose:  (1) to gather forensic information to investigate and potentially prosecute a defendant for the alleged offenses and (2) to obtain information necessary for medical diagnosis and treatment of the victim").  Here, Kling testified that she asks victims for "a clear history" of what brought them to her in order to identify specific symptoms that may not be apparent from the physical examination, then collaborates with physicians to order appropriate treatment.  She noted her decision on what tests or medications to order often depends on a victim's description of what occurred.

C.F.'s statements to Kling provided a history of her condition, but also raise an evidentiary difficulty in that they identify appellant as the perpetrator of her abuse.  Virginia cases have not yet addressed the question of whether statements of fault are relevant to diagnosis or treatment under Rule 2:803(4).  Under the evidence law of the federal courts and many sister

- 17 -

states, they are not. See, e.g., United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980) (stating the general principle that statements of fault are not reasonably pertinent to diagnosis or treatment under Federal Rule of Evidence 803(4)). Many courts, however, have identified an exception to this principle in the case of child sexual abuse. In United States v. Renville, 779 F.2d 430 (8th Cir. 1985), the leading case on the topic, the Eighth Circuit held that statements made by a child identifying the perpetrator of the abuse are pertinent to the child's diagnosis and treatment. 779 F.2d at 436. The Renville court distinguished statements of fault generally from specific statements of identity made by child victims in sexual abuse cases, holding the latter to be admissible under Federal Rule 803(4) because they assist care providers in treating actual injuries, assessing emotional and psychological harms, and preventing future abuse by that perpetrator. Id. at 436-38 (citing common state laws obligating care providers to report suspected abuse in order to prevent continuing abuse); see also Code § 63.2-1509(A)(2) (requiring "any person employed in the nursing profession" to report suspected child abuse).

Numerous sister states have adopted reasoning similar to that of the Renville court in interpreting their own evidence rules analogous to Federal Rule 803(4). See, e.g., People v. Falaster, 670 N.E.2d 624, 218 (Ill. 1996) ("We believe that, at least in the family setting, a victim's identification of a family member as the offender is closely related to the victim's diagnosis and treatment in cases involving allegations of sexual abuse, and thus we agree with those decisions that have permitted the admission of such hearsay evidence."); State v. Tracy, 482 N.W.2d 675, 682 (Iowa 1992) (adopting Renville analysis because "much of the State's proof [in child sexual abuse cases] will necessarily have to be *admissible* hearsay statements made by the victim to relatives and medical personnel"); State v. Dever, 596 N.E.2d 436, 447 (Ohio 1992) ("[W]e adopt Renville's reasoning, and hold that statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of

- 18 -

diagnosis and treatment, are admissible pursuant to Evid. R. 803(4), when such statements are made for the purposes enumerated in that rule."); State v. Altgilbers, 786 P.2d 680, 687 (N.M. Ct. App. 1989) (admitting hearsay statements of abused children as being made for purposes of medical diagnosis or treatment, even though the statements identified defendant); People v. Wilkins, 349 N.W.2d 815, 817 (Mich. 1984) (same); Goldade v. State, 674 P.2d 721, 725 (Wyo. 1983) (same). Although an adult victim's statements assigning blame in cases of merely somatic injury may not be reasonably pertinent to diagnosis or treatment, child sexual abuse presents a more nuanced situation in which care providers would reasonably rely on a victim's narrative that identified the abuser in determining appropriate treatment.[5] Accordingly, this Court holds that C.F.'s statements were reasonably pertinent to diagnosis or treatment, thereby satisfying the second element of Rule 2:803(4).

Finally, the facts indicate that C.F.'s statements were sufficiently reliable to fall within the medical treatment exception. As noted, nothing in the record suggests that C.F. spoke to Kling for the purpose of creating evidence to use against appellant. The trial court made a factual finding supported by evidence to this effect, observing that

> there is nothing the Court has heard which suggests that the child at 11 years of age, or 14, 12, 13, 14 knew what the prosecution was all about; that she was so sophisticated at this age that she would be trying to set up a case against the defendant in this case. The Court doesn't find that.

---

[5] Although not applicable to the case at bar, this Court notes that the General Assembly recognized the importance of child testimony in prosecutions of offenses against children when it enacted Code § 19.2-268.3 in 2016. That statute provides that out-of-court statements made by an alleged victim of an offense against children who is younger than thirteen at the time of trial that describe any act directed against that child relating to the alleged offense "shall not be excluded as hearsay" provided that the trial court determines in a prior hearing that the statement is sufficiently reliable and the child testifies or is declared unavailable to testify and corroborative evidence exists. Code § 19.2-268.3.

Moreover, C.F. was thirteen years old at the time of her second interview with Kling on October 10, 2014. Unlike the two-year-old victim in Jenkins, C.F. was old enough to appreciate the need to furnish Kling reliable information about her condition. The Lawlor Court's concern about the declarant's mixed motivations in speaking with a drug counselor is likewise irrelevant here as C.F. had no selfish incentive to undergo the invasive examination and interview. C.F.'s statements were thus sufficiently reliable to satisfy the third element of Rule 2:803(4).

Accordingly, C.F.'s hearsay statements to Kling—with one exception detailed below—were admissible pursuant to Rule 2:803(4). As such, the trial court did not abuse its discretion in admitting the statements.

### C. Hearsay statement concerning threat

During the Commonwealth's direct examination of Kling, the Commonwealth's attorney asked whether C.F. "ever indicate[d] to you whether or not [appellant] had made any threats to her." Over appellant's renewed hearsay objection, the trial court admitted the following testimony in response:

> When I asked her if she had had any injury, pain or bleeding from her genital area, she said, "My privates." *She then stated, "After my mom pawned one of his guns, he bought a nine millimeter and said if I told anybody, he was going to kill me."*

The Commonwealth ended its direct examination immediately after this response.

The italicized language, responsive to the threat question, does not fall within the Rule 2:803(4) exception for statements made for medical treatment or diagnosis. Whether appellant obtained a firearm and threatened C.F. with it is a fact unrelated to any medical treatment or diagnostic purpose. Because it cannot be construed as relating to medical history, past or present sensations, or the inception or general cause of the condition, the threat statement does not fall within Rule 2:803(4)'s permissible categories. Accordingly, the threat statement is hearsay not within any exception and the trial court abused its discretion in admitting it.

Error, however, is not necessarily fatal to a fair trial. "No trial is perfect, and error will at times creep in." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (*en banc*) (quoting Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)). "In Virginia, non-constitutional error is harmless 'when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Id. at 1005-06, 407 S.E.2d at 911 (quoting Code § 8.01-678). "In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (quoting Code § 8.01-678). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911.

In light of all evidence presented, this Court can conclude that admission of C.F.'s spontaneous statement about appellant's threat did not influence the jury's verdict. The threat statement was relevant only to the "force, threat or intimidation" element of the object sexual penetration charge occurring on October 6, 2014. As charged, Code § 18.2-67.2 provides in pertinent part:

> An accused shall be guilty of inanimate or animate object sexual penetration if he or she penetrates the labia majora or anus of a complaining witness, whether or not his or her spouse, other than for a bona fide medical purpose . . . and . . . [t]he act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness . . . .

The jury had before it ample additional evidence to establish the "force, threat or intimidation" element. C.F. testified that she unavailingly told appellant to stop during the October 6, 2014 assault, thereby providing evidence of force to support the jury's verdict. Additionally, the

Commonwealth's evidence established that appellant had authority to instruct and discipline C.F. such that C.F. was required to obey appellant or face punishment. In light of the jury instructions defining intimidation as "putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will" and that intimidation "may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure," this obey-or-be-punished dynamic was sufficient to prove intimidation when he forced himself on C.F. Accordingly, the record demonstrates that the error in admitting the threat statement did not substantially influence the jury, which had before it other competent evidence to satisfy the "force, threat or intimidation" element. As such, any error in admitting the threat statement was harmless.

## IV.  CONCLUSION

Appellant had the opportunity to confront C.F. on cross-examination, thereby satisfying his Sixth Amendment Confrontation Clause rights. With the exception of the threat statement, C.F.'s hearsay statements to Kling were admissible under the medical treatment exception to the hearsay rule codified in Rule 2:803(4). The admission of the threat statement, while erroneous, was harmless. This Court accordingly affirms appellant's convictions.

Affirmed.