UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:    Judges Petty, Alston and Russell
Argued at Lexington, Virginia


CLINTON BRADLEY WALKER

v.       Record No. 1973-16-3

CAMPBELL COUNTY DEPARTMENT
  OF SOCIAL SERVICES                                         MEMORANDUM OPINION* BY
                                                             JUDGE WESLEY G. RUSSELL, JR.
CLINTON BRADLEY WALKER                                       AUGUST 15, 2017

v.       Record No. 1974-16-3

CAMPBELL COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

(George W. Nolley, on briefs), for appellant.  Appellant submitting
on briefs.

(David W. Shreve, County Attorney; Debra M. Beale, Guardian *ad
litem* for the minor children, on brief), for appellee.  Appellee and
Guardian *ad litem* submitting on brief.


In this consolidated appeal, Clinton Bradley Walker (appellant) appeals the circuit court's

order denying his motion to dismiss and granting the petitions of Campbell County's Department of

Social Services (the Department) to terminate his parental rights regarding his daughters, L.J.W. and

I.B.W.  Finding no error, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" Bristol Dep't of Social Servs. v. Welch, 64 Va. App. 34, 40, 764 S.E.2d 284, 287 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991)).

Thus viewed, the record shows that I.B.W. was born to appellant and Holly Clyburn[1] (mother) on September 5, 2010.  Mother has another daughter, A.C., not shared with appellant.  Mother, appellant, and I.B.W. were living together with appellant's parents (the Walkers) and another child of mother's when mother gave birth to L.J.W. on February 22, 2015.  Mother and L.J.W. were released from the hospital and returned to the Walker home on February 23, 2015.  Mother had requested to be discharged from the hospital early after the nurses advised her against co-sleeping with the newborn, which mother expressed a desire to do.

An umbilical cord blood screen subsequently revealed the presence of benzodiazepines, buprenorphine, and opiates in L.J.W.'s blood.  A urine sample from mother indicated the presence of benzodiazepines in her system.  Because mother did not have a prescription for any of the drugs, the hospital social worker reported the situation to the Department.

On March 2, 2015, upon learning of the drug exposure, the Department visited the Walker residence.  According to the child protective services investigator, appellant refused to take a drug screen, but stated that he would test positive for benzodiazepines, because he was taking Tramadol and Xanax.  He admitted that, although he had had a prescription for the drugs, the prescriptions were no longer valid; he did not show the investigator the prescriptions.  Mother tested positive for drugs for which she did not have a prescription, and she admitted to having a history of heroin use

---

[1] In the same circuit court proceeding, mother's parental rights regarding I.B.W. and L.J.W. also were terminated.  Mother appealed to this Court, and we affirmed the appeal by order dated August 15, 2017.  Clyburn v. Campbell Cty. Dep't of Social Servs., No. 1722-16-3.

and to taking Suboxone for withdrawal symptoms while she was pregnant. The grandmother also tested positive for substances, but she had a prescription for the relevant medications. As a result of the visit, a safety plan was coordinated with the parents and the grandmother whereby the parties agreed that appellant and mother would refrain from using illegal and non-prescribed substances, that the children would have sober supervision, and that the grandmother would ensure that the parents' supervision of the children was supervised. Mother further agreed not to co-sleep with or breastfeed the infant.

Mother was incarcerated on March 3, 2015. The Department filed a petition for a protective order on March 4, 2015. On that day, the investigator again met with appellant; appellant stated that he had obtained a prescription for Xanax. The Department requested that appellant submit to a hair follicle test. At the time, he agreed to get a drug screen. There was a subsequent meeting on March 9; appellant's speech was slurred and he appeared disoriented. He stated that he would not submit to a drug screen without a court order.

On March 10, the Department conducted an emergency removal of L.J.W. after she was released from the hospital for potential withdrawal symptoms; she was placed in foster care. I.B.W. and A.C. initially remained with appellant's parents, but on March 13, 2015, both children also were placed in a foster home. As found in the March 13 removal order, appellant had tested positive for amphetamines, methamphetamines, and opiates; and his mother had tested positive for benzodiazepine, opiates, and oxycodone. The Department considered other relatives, including mother's mother and appellant's brother and sister-in-law, as potential alternative family placements, but they were unavailable to assist.

On March 30, I.B.W.'s foster parents took her to the doctor for a rash, which was determined to be scabies. The Department followed up with appellant on March 31; appellant reported that he was seeking substance abuse treatment, but did not inquire regarding the status of

the children. Appellant participated in a Family Assessment Planning meeting, wherein services available to him were discussed.

Appellant was tested again on April 6, 2015 and tested positive for buprenorphine, for which he did not have a valid prescription. On April 23, the Department discussed an initial foster care plan and what would need to be accomplished to meet the goal of returning the children home. The plan required appellant receiving substance abuse treatment and remaining substance free as well as continuing his employment. It also recommended that he find appropriate housing in light of his parents' elderliness and their abundant medication.

Mother was re-arrested and jailed in April 2015. In May, she was released from jail to participate in an in-patient treatment program at Bethany Hall, where she stayed until she was discharged in October 2015 for failure to comply with the program rules. She was allowed one visit with the children on August 31. She had no contact with the Department from October 2015 until April 2016. She was rearrested in April 2016.

On May 22, 2015, the Department tested appellant for drugs in anticipation of a visit with the children; he tested positive for buprenorphine. Appellant stated that he was no longer able to participate in his treatment program because he could not afford to do so. On May 29, appellant was denied a visit with the children because of his inability to produce a drug screen sample. On June 5, the Department met with appellant again to discuss the status of his case and what he needed to do, particularly with respect to his substance abuse treatment. When told that the Department could pay for his treatment, appellant noted he had insurance. The Department emphasized that the agency would be able to assist. The Department also reminded appellant of the limited amount of time in foster care cases.

Appellant visited with the children on June 19, 2015. The Department indicated that he had issues with L.J.W. that persisted over the course of the visit. Another visit was scheduled for June

26, but appellant cancelled that visit, stating that the cancellation was due to work. He did not ask about rescheduling, and he cancelled the next visit, scheduled for July 3, as well. Although appellant also cancelled a July 10 visit, he did appear for a visit on July 17. At that visit, he again struggled with the infant, giving her her pacifier upside down several times. He also had difficulty interacting with both children at the same time.

On August 14, 2015, appellant was arrested for public intoxication, assault and battery, and threatening to bomb a building. An August 28 visit with the children did not occur because appellant tested positive for opiates. The Department then entered into a "contract" whereby appellant agreed to meet certain goals in his effort to gain the return of his daughters, to include maintaining contact with his case worker, attending visitations, remaining free of intoxicants, participating in therapy and implementing any recommendations flowing therefrom, and working with counselors to improve parenting skills. A few weeks later, appellant failed to make his weekly check-in with the Department and missed another visitation. On September 27, appellant was offered one-on-one visitation with L.J.W., which was refused when he learned that I.B.W. would not be there because her foster parents were taking her out of town. Appellant did attend the next three visits, but the November 1, 2015 visit was cancelled when appellant tested positive for barbiturates. On November 5, appellant refused to cooperate with a hair follicle test.

On November 23, 2015, I.B.W. was moved to the same foster care home as L.J.W., where they remained until trial. On December 3, 2015, appellant had another visit with the children, during most of which L.J.W. cried and I.B.W. tried to soothe her. Appellant cancelled his December 10 visit, claiming to have injured himself after falling in the shower.

On December 11, 2015, the Department met with appellant to inform him of the agency's decision to change the foster care plan goal from returning the children to the parents to a goal of adoption. Appellant expressed confusion, stating he thought he had two years, rather than just one,

to work towards getting his children back. The Department had made clear, however, on multiple occasions, that the available timeframe was only one year. Appellant cancelled his December 16, 2015 visit with the children. He also cancelled a January 28, 2016 visit, asserting it was the foster parents' fault. On January 29, the Department again requested that appellant submit to a hair follicle test within two days, but no test results were obtained.

Although he had a relatively successful visit with the children on February 7, on March 2, 2016, appellant tested positive for phencyclidine and was unable to produce a prescription, so that visit was cancelled. The Department also reported that appellant routinely failed to maintain weekly contact with it.

A foster care plan, documenting that termination of appellant's parental rights was in the best interests of the children, was approved by the juvenile and domestic relations district court on January 11, 2016. On January 14, 2016, the Department filed in the JDR court a petition to terminate appellant's residual parental rights to both children pursuant to Code § 16.1-283(B) and (C). On May 17, 2016, the JDR court granted the Department's petition, finding sufficient grounds for termination under both Code § 16.1-283(B) and (C). Appellant appealed to the circuit court for a trial *de novo*. The matter was tried before the circuit court on September 23, 2016.

The rights of both mother and appellant were adjudicated in the same proceeding. At the time of trial, mother was incarcerated with eight months remaining to be served. During trial, Dr. Andrew Anderson was accepted as an expert in clinical psychology and testified on behalf of the Department.

With respect to mother, Dr. Anderson testified that mother suffered no intellectual deficiencies, but he also concluded that mother has an anti-social personality and is "an overly narcissistic individual who focuses on her own needs and feelings, and to an extent that likely would

limit her ability to give adequate care to the needs and feelings of others . . . ." He also noted mother's below average ability to plan and problem solve, especially while intoxicated or stressed. When Dr. Anderson's report related to mother was introduced as an exhibit, it was admitted over appellant's objection on hearsay grounds. The report contained statements attributed to mother reflecting her educational, employment, medical, and criminal history. The report included mother's descriptions of her history of drug and alcohol abuse.

Dr. Anderson, who had evaluated appellant on June 25, 2015 and conducted a psychological and parenting assessment, testified regarding what appellant told him during their interview, including a history of alcohol abuse beginning at age seventeen and continuing to 2015; a back injury occurring in 2004 that led to prolonged abuse of prescription narcotics and opiates, to include use of Suboxone in March 2015; and convictions for distribution of cocaine and driving under the influence. Dr. Anderson opined that appellant suffered from depression, significant personality disorder in the form of narcissistic egocentric personality makeup, low stress tolerance, impulsive and anti-social tendencies, and an inability for long-term thinking. Dr. Anderson described appellant's performance on the Parent Awareness Skills Survey as "spotty," missing critical intervention solutions to some of the posed hypotheticals and an inability to recognize or acknowledge children's feelings. After direct examination, the Department introduced, over mother's objection (which appellant joined), the written report Dr. Anderson prepared in response to the request for evaluation of appellant.

The evidence further showed that appellant was receiving outpatient therapy services for his depression and anxiety at Horizon Behavioral Health. Appellant attended only three of his scheduled sessions; he cancelled one of them and did not show for four others. One session was terminated early because appellant was drunk, and overall, "the treatment was incomplete due to [appellant's] noncompliance, and his case was closed."

Evidence of appellant's criminal history relating to drugs was admitted at trial. The order terminating mother's rights to her other daughter, A.C., was introduced into evidence over appellant's objection based on relevance. Appellant admitted to not having bonded with L.J.W.

The Department posited reasons for its position that each parent's rights should be terminated regarding both children. With respect to appellant, the Department cited his ongoing substance abuse, failure to complete mental health or substance abuse treatments, and inability to recognize his drug addiction; his losing his job and failure to timely find suitable housing; and his failure to comply with recommendations made from his psychological examination. Appellant's inability to parent both children at the same time also was an issue. The Department expressly noted appellant's "temper, threats to others, continued issues with the legal system, failure to follow through with his contract, and [that] the time line of foster care is gone for these children" and stated "[t]hese children deserve permanency."

On September 23, 2016, the circuit court entered its orders terminating both parents' residual rights to their daughters. Appellant's rights to L.J.W. were terminated based on Code § 16.1-283(B) and (C); pursuant to (C), the order noted that appellant,

> without good cause, has been unwilling or unable to within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to . . . the child's foster care placement, notwithstanding the reasonable and appropriate efforts of . . . agencies to such end.

Appellant's rights to I.B.W. were terminated based on Code § 16.1-283(C) for failure to remedy the conditions that led to her placement in foster care as well as his failure to maintain contact and substantially plan for her future.

On appeal to this Court, appellant challenges the admission of certain evidence and the sufficiency of the evidence supporting the termination orders. He presents the following specific assignments of error:

I. The trial court committed reversible error when it admitted into evidence the psychological evaluation report of [mother], over the objection of Clinton Bradley Walker that the report was inadmissible hearsay as regards the [Department's] case against Clinton Bradley Walker.

II. The trial court committed reversible error when it admitted into evidence the order for involuntary termination of residual parental rights of [mother] in [A.C.], over the objection of Clinton Bradley Walker that the order was inadmissible as being irrelevant as regards the [Department's] case against Clinton Bradley Walker, since Clinton Bradley Walker is not the father of [A.C.].

III. The trial court committed reversible error when it ruled that the evidence was sufficient to approve the involuntary termination of the parental rights of Clinton Bradley Walker in and to [L.J.W. and I.B.W.].

ANALYSIS

I. Admission of Evidence

Appellant first challenges the admission of certain evidence during the trial. Specifically, he challenges the trial court's admission into evidence of a psychological evaluation report of mother and the admission of an order terminating mother's parental rights regarding another child, A.C.

A decision to admit or exclude evidence is a matter of discretion, and a trial court's ruling will be upheld on appeal unless the court abused its discretion. See Tisdale v. Commonwealth, 65 Va. App. 478, 481, 778 S.E.2d 554, 555 (2015). Moreover, "[w]hen addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "The circuit court has 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Eaton v. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

- 9 -

A.  Dr. Anderson's Report Regarding Mother

Appellant assigns error to the admission of Dr. Anderson's report regarding the psychological examination of mother, because "the report was inadmissible hearsay as regards [the case] against" appellant.

"'As a general rule, hearsay evidence is incompetent and inadmissible,' and 'the party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).  "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."  Taylor v. Commonwealth, 28 Va. App. 1, 9, 502 S.E.2d 113, 117 (1998) (quoting Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977)).

Pursuant to Rule 2:802, "[h]earsay is not admissible except as provided by these Rules, other Rules of the Supreme Court of Virginia, or by Virginia statutes or case law."  Rule 2:803 in turn provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) Statements for purposes of medical treatment.  Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

At trial, the court ruled that the report was admissible because the statements by mother contained in the report were provided as "the history given to [Dr. Anderson] as a psychologist [to allow him to formulate] his diagnosis . . . ."

- 10 -

Appellant does not assert that the statements were not for treatment purposes; rather he argues that the evidence was inadmissible hearsay because it did "not regard a medical report or evaluation of himself or where he was or is referenced or accused of a misdeed, but instead" regarded only mother. Contrary to appellant's apparent assumption, however, the exclusion from the hearsay rule applicable to statements made for medical treatment is not party-specific. It applies irrespective of the identity of the declarant. Unlike the exception afforded admissions by party-opponents, see Rule 2:803(0), there is no requirement that the statement be "the party's own statement."

We have noted that "reliability is the touchstone for determining admissibility of a patient's out-of-court statements that are made for diagnosis and treatment purposes." Campos v. Commonwealth, 67 Va. App. 690, 711, 800 S.E.2d 174, 185 (2017). That the statements do not concern appellant does not bear on their reliability. We have explained that "for a hearsay statement to be admissible under Virginia Rule 2:803(4), the *declarant* must make it for purposes of medical diagnosis or treatment, it must fit at least one of the three types of admissible statements and be reasonably pertinent to diagnosis or treatment, and it must be reliable." Id. at 712, 800 S.E.2d at 185 (emphasis added). The Rule includes no other conditions and does not limit the purpose for which the statement can be offered. Because mother's statements related in the report met all of the requirements found in Rule 2:803(4), the trial court correctly overruled appellant's hearsay objection.

### B. Order Terminating Mother's Parental Rights Regarding A.C.

Appellant next challenges the admission of the order terminating mother's rights to her other daughter, A.C., arguing that it is irrelevant to determining or evaluating his rights regarding his children.

"Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991) (citing Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987)).

In evaluating a petition for termination of parental rights, a trial court is directed to consider alternative placements for the affected children. See Code § 16.1-283(A) ("Any order terminating residual parental rights shall be accompanied by an order continuing or granting custody to a local board of social services, to a licensed child-placing agency or the granting of custody or guardianship to a relative or other interested individual . . . . [I]n such cases the court shall give a consideration to granting custody to relatives of the child, including grandparents."). Indeed, the Department "is mandated 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 218, 597 S.E.2d 214, 220 (2004) (quoting Logan, 13 Va. App. at 131, 409 S.E.2d at 465). Because one parent's rights can be terminated without respect to the other parent's rights, mother remained a potential custodian of the children until her rights also were terminated. Thus, evidence that established or negated mother's suitability as a custodian was relevant in a proceeding to terminate appellant's parental rights.

Moreover, as appellant concedes on brief, the prior termination order was "clearly admissible in the case . . . against" mother. In fact, it was an element that the Commonwealth was required to prove to establish that termination of her rights was appropriate pursuant to Code § 16.1-283(E), which provides for the termination of parental rights of a "child who is in the custody of a local board or licensed child-placing agency" when "the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) *the residual*

*parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . .*" (Emphasis added).

When a case is brought against multiple respondents, it is not unusual for a piece of evidence to be admissible against one, but not the other. The remedy in such a situation is not exclusion of the evidence, but admitting it for a limited purpose—to be considered against the party against whom the evidence is admissible. See Va. R. Evid. 2:105 ("When evidence is admissible as to one party or for one purpose but not admissible as to another party or for another purpose, the court upon motion shall restrict such evidence to its proper scope and instruct the jury accordingly. The court may give such limiting instructions *sua sponte*, to which any party may object.").

Of course, the trial here was a bench trial. "A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." Pierce v. Commonwealth, 50 Va. App. 609, 617, 652 S.E.2d 785, 789 (2007) (internal quotation marks and citations omitted). A "trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Id. at 616, 652 S.E.2d at 789. Accordingly, even if the termination order had not been relevant to determining mother's potential suitability as a custodian if the court terminated appellant's parental rights, we do not conclude that its admission against mother prejudiced appellant or constituted reversible error.

II. Sufficiency of the Evidence to Support Termination of Parental Rights

Appellant argues the evidence was not sufficient to prove, by clear and convincing evidence, that termination was in the children's best interests or that the requirements of Code § 16.1-283(B) or (C)(2) were proven. It is well established that,

When reviewing termination of residual parental rights, this Court presumes that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. . . . Therefore, in a case involving termination of parental rights, [t]he trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Eaton, 66 Va. App. at 324, 785 S.E.2d at 235 (internal quotation marks and citations omitted).

Because "the rights of parents may not be lightly severed," M.G. v. Albemarle Cty. Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (internal quotation marks and citation omitted), clear and convincing evidence must establish the statutory grounds for termination, Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005). In the end, the "child's best interests" remain the "paramount consideration" of the courts. Akers v. Fauquier Cty. Dep't of Soc. Servs., 44 Va. App. 247, 262, 604 S.E.2d 737, 744 (2004) (citation omitted). Even on this issue, however, we cannot "substitute our judgment" for the judgment of the trial court, but rather, we review the record only to determine if sufficient evidence supports the trial court's conclusion. Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991).

We first note that, on brief, appellant states that his rights with respect to I.B.W. "were involuntarily terminated pursuant to [Code] § 16.1-283(C)(2)[,]" which requires the Department to prove that he has failed to exhibit sufficient efforts to remedy the conditions leading to the child's placement in foster care. Appellant then argues that the "trial court should not have terminated [his] parental rights in and to [I.B.W.] pursuant to [Code] § 16.1-283(C)(2), in as much as the Department [did not] meet its burden of proof thereunder." Appellant ignores, however, that in terminating his rights to I.B.W., the court also found, as noted in its September 23, 2016 order, that appellant

- 14 -

without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

Thus, appellant's rights also were terminated in accord with Code § 16.1-283(C)(1). Appellant does not challenge this independent finding or basis for termination on appeal, and his failure to challenge the circuit court's termination decision under Code § 16.1-283(C)(1) renders moot his claim regarding the sufficiency of the evidence to support termination under Code § 16.1-283(B) or (C)(2), because, regardless of the merits of his arguments regarding the trial court's rulings related to Code § 16.1-283(B) and (C)(2), termination of his parental rights would occur in any event under Code § 16.1-283(C)(1). Fields, 46 Va. App. at 8, 614 S.E.2d at 659 (holding that failure to challenge the trial court's termination of parental rights under one subsection of Code § 16.1-283 renders moot parent's challenge to termination pursuant to other subsections of Code § 16.1-283). Accordingly, we uphold the trial court's determination and find the evidence sufficient to support termination of his rights with respect to I.B.W. pursuant to Code § 16.1-283(C)(1).

With respect to L.J.W., the evidence showed that appellant was unable to abide by the action plan set in place by the Department. He routinely missed check-in calls and cancelled visitations. During the visits he did attend, he demonstrated an inability to parent both children. He was unable to secure adequate housing and lost his job. Appellant has a long history of drug abuse and failure to complete substance abuse programs. He was unable to conduct visits due to repeated positive drug screens. In short, despite a multitude of opportunities to rectify the situation, father proved either unwilling or unable to address the myriad of issues that created the situation in the first place. Because "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities," Kaywood v.

- 15 -

Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990), and the overwhelming evidence offered by the Department, we cannot say that the trial court erred in granting the petition to terminate appellant's parental rights regarding L.J.W.

CONCLUSION

Finding no reversible error, we affirm the judgment of the circuit court terminating appellant's parental rights.

Affirmed.